UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-115(5) (KMM/DTS)

UNITED STATES OF AMERICA, Plaintiff,

vs.

ERICK DAVIS, Defendant.

**DEFENDANT'S APPEAL/ MOTION FOR AMENDMENT OF CONDITION OF RELEASE**

Defendant Erik Davis, through undersigned counsel, pursuant to 18 U.S.C. § 3145(a), hereby partially objects to a condition for release imposed by the Magistrate Judge and moves the Court for an Order amending his conditions of release to delete the restriction that he not have contact directly or indirectly with any Co-Defendants listed in the Indictment other than in the presence of counsel. (Order, 7/14/2026, Doc. 182 at 2, amending Order Setting Conditions of Release, Doc. 37, Page 2, 7(g)). Mr. Davis asserts his right to *de novo* review of this condition. United States v. Maull, 773 F.2d 1479, 1481-822, 1484 (8th Cir. 1985).

It should be noted that Mr. Davis previously filed a similar motion to review the condition imposed by Magistrate Judge John Docherty at the initial appearance that unconditionally prevented contact with co-defendants. (Doc. 150). The motion was revised by Magistrate Judge David Schultz who amended the condition to prohibit contact with co-defendants except in the presence of counsel. Mr. Davis, however, was and is relying on 18 U.S.C. § 3145(a)(2) which authorizes a motion to the Court for amendment

of the conditions of release where the release order was by a Magistrate Judge. Mr. Davis again requests that the District Court Judge review *de novo* the release provision prohibiting contact with co-defendants. Although the amendment to allow contact in the presence of co-counsel is an improvement, it is not sufficient as any prohibition on contact is inappropriate.

The Bail Reform Act provides that the Court must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The condition prohibiting contact with co-defendants is not a necessary condition to assure Mr. Davis' appearance as required to the safety of any other person or the community. Further the condition places an undue burdens on Mr. Davis and violates his constitutional rights.

There was no suggestion that the challenged condition was necessary to prevent any risk of flight. Magistrate Judge Docherty stated at the hearing addressing the detention of Mr. Davis and four other co-defendants, "I do not find that an of these defendants pose such a risk [of flight]." (6/16/26 Tr., Doc. 131 at 43:24-44:1). The restriction similarly is unnecessary to protect the community because Mr. Davis poses no risk the community. Mr. Davis has no prior criminal history and therefore no history of any failure to appear in Court and no indication that he poses any danger of committing any sort of illegal activity. (Pretrial Services Report at 3). He has very strong ties to the community, having lived in Minnesota for 20 years, currently lives with his two young

adult children and domestic partner, and has been employed a professor at Macalaster College since 2007. (Id. at 1-2). Indeed, Mr. Davis has every incentive to remain law abiding and conduct himself property in order to preserve his reputation and career.

Magistrate Judge Docherty did not specifically state why he believed that no contact with co-defendants was a necessary condition. The government appeared to argue that based on the charge of conspiracy to impede a federal officer tbere was some sort of continuing danger.[1] There was no showing as to how Mr. Davis with no prior criminal record or co-defendants with minimal if any criminal records would be likely to engage in any criminal conspiracy or other illegal activity when now having to defend themselves against federal felony charges. The Magistrate Judge, in denying the government's request for a detention hearing, stated that based on the most serious allegation in the Indictment involving the crashing of a vehicle, "I'm invited to then expand that to say that because that happened, there will also be threats against witnesses and jurors. And that is a step I will not take." (Doc. 131 at 44:5-13). There is no basis for concluding that Mr. Davis and his co-defendants present any risk to the community by speaking with each other.

In response to the motion to amend conditions previously brought by Mr. Davis and seven other co-defendants, the government claimed that "No contact orders are a typical condition of release and are typical of cases where there are many co-defendants

[1] The full charge is conspiracy to impede or injure a federal officer, but there is no allegation in the 94 page Indictment that any defendant made any agreement or plan to injure a federal officer.

in the indictment" and cited four other cases in this district (two without any identifying case numbers) where a similar condition of release was purportedly imposed. (Doc. 176 at 1). The government merely cited the form release order in each case without pointing to any reasoning in the record in any of those non-binding cases to justify the conditions. Further the government made no attempt of any sort to discuss the compare the facts that may have justified the condition in those cases to relevant fact of the instant case,. The government made no attempt at a substantive explanation as to why the disputed condition was necessary to prevent risk of flight or protect the community. (Doc. 176).

In his Order modifying the condition, Magistrate Judge Schultz merely quoted the government's statement that no contact orders are a typical condition of release where there are many co-defendants, but provided no analysis of the validity of that argument or any explanation as to why he was modifying the condition only in part to allow contact in the presence of counsel but otherwise leaving the condition in place. (Doc. 182). Mr. Davis and the co-defendants have raised substantial arguments challenging the condition and are entitled to a meaningful analysis and explanation from the Court.

It is important to note that not only do Mr. Davis and his Co-Defendants lack any prior history indicating danger to the community, but also the alleged offense and conspiracy itself does not evince a desire to cause harm, and certainly harm of the sort common in most criminal offenses. The alleged conduct was not in any way economically motivated as in most alleged criminal conspiracies, which may incentive continued

criminal activity. Critically, it is clear that the alleged conduct consisted of non-violent resistance which was intended to protect the community from harm being caused by a massive campaign of violent federal repression against the community. The federal government's large scale violations of constitutional and human rights are well documented by authoritative human rights organizations and this Court. See e.g. Human Rights Watch, "A Manufactured Crisis" Minnesota Communities Terrorized by the Federal Government, 2026, www.hrw.org/sites/default/files/media_2026/06/us_minneapolis0626%20web_0.pdf ; Minnesota v. Noem, 818 F. Supp. 3d 1030 (D. Minn. 2026); Tincher v. Noem, 816 F. Supp. 3d 931 (D. Minn. 2026); Hussen v. Noem, Case No. 0:26-cv-00324, 2026 U.S. Dist. LEXIS 47700 (D. Minn., filed March 9, 2026). As Human Rights Watch's summary explained, " The Trump administration's deployment of thousands of federal immigration agents to Minnesota between December 2025 and March 2026 led to widespread human rights violations, terrorized residents with long-lasting effects, and spotlighted the deeply abusive patterns in US immigration enforcement." www.hrw.org/news/2026/06/18/us-federal-government-terrorized-minnesota-communities. The Court found in a civil lawsuit challenging the federal government's actions:

> Plaintiffs have made a strong showing that Operation Metro Surge has had, and will likely continue to have, profound and even heartbreaking, consequences on the State of Minnesota, the Twin Cities, and Minnesotans. Since Operation Metro Surge began, there have been multiple shootings of Minnesota residents by federal immigration enforcement agents.

> Additionally, there is evidence that ICE and CBP agents have engaged in racial profiling, excessive use of force, and other harmful actions.

Minnesota v. Noem, 818 F.Supp.3d at 1048.

In a recent decision, this Court issued a rare ruling granting a motion to quash the federal government's grand jury subpoenas for records from state and municipal offices of Minnesota elected officials regarding their responses to Operation Metro Surge. In re Subpoenas, 2026 U.S. Dist. LEXIS 139487 (D. Minn, June 22, 2026). Judge Schiltz noted in his decision, "During the surge, there were widespread reports of DHS agents engaging in abusive and dangerous tactics seemingly designed to escalate tensions and destabilize the corrimunity." Id. at *4. Judge Schiltz found "overwhelming evidence that these subpoenas were not issued to investigate, but to harass, coerce, and retaliate." Id. at *27. The subpoena case adds to the overwhelming public record that not only was Operation Metro Surge a severely repressive and abusive offensive against the community, but that the Trump regime has shown a modus operandi of using the criminal justice system to harass, coerce and retaliate against political opponents.

When evaluating the necessity for any restrictions on Mr. Davis' and his Co-Defendants' freedom while on release, it is appropriate for the Court to consider the context of the case which arises from well-documented abuse and repression by the federal government. This case should be recognized as the federal government's extension of its repressive conduct from invasive and brutal actions in the community to weaponization of the legal system against those who dissent. While the government is

expending massive effort and resources to prosecute Mr. Davis and his Co-Defendants and many dozens of other people in this district for non-violent resistance, it has brought zero criminal charges against any federal officers or agents who have engaged in abusive conduct that has been well documented. This includes no charges against federal agents who are shown on clearly on video shooting and killing without justification Alex Pretti and Renee Good. See A Manufactured Crisis at 57-62. This includes no charges against and ICE officer who shot Julio Cesar Sosa-Celis in the leg without justification and then clearly made up a story that Sosa-Celis and a co-defendant has violently assaulted the officer. Id. at 63-65; United States v. Aljorna and Cesar Solis, Case No. 26-mj-23 (PAM/DLM), Doc.48 (D. Minn. 2/11/2026 (government moves to dismiss charges with prejudice, recognizing "Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit . . . as well as the preliminary-hearing testimony.") The public record including prior cases before the Court compel recognition that this prosecution may well not be based on legitimate law enforcement and pursuit of justice, but part of the government's repressive political goals. In such a context, the government's request for restrictions on Defendants' freedom should be evaluated with far more caution than in a typical case.

Mr. Davis does not challenge the restriction that he not have contact with alleged victims and witnesses in the case (provided that the government provides the required No Contact List). He challenges the prohibition on speaking with co-defendants because of

the hardship it imposes. Several of the co-defendants are among Mr. Davis' best friends. They frequently socialize, and rely on each other for emotional support and advice when dealing with problems in their personal lives. Mr. Davis' relationship with his friends is particularly important to him since his wife passed way from cancer in 2021. (Pretrial Services Report at 1). The prohibition on contact with co-defendants thereby imposes an hurtful, unfair and unnecessary burden. The prohibition also unnecessarily interferes with Mr. Davis's recognized constitutionally protect right of "freedom of association" based on the recognition that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." Roberts v. United States Jaycees, 468 U.S. 609, 617-618 (1984).

The prohibition on contact with co-defendants also unduly impairs the ability of Mr. Davis and his co-defendants to adequately prepare their legal defenses. Mr. Davis is highly educated and intelligent, and will accordingly be participating and assisting the preparation of his defense. Contact among Co-Defendants is necessary to protect their Sixth Amendment right to effectively participate in their defense and have effective assistance of counsel.

Contact among the Co-Defendants is necessary in order to adequately prepare a defense to what the government contends is such an extraordinarily complex case that a

continuance of at least 90 days is necessary for all deadlines. (Doc. 22). The government has stated:

> Discovery is voluminous and complex, totaling over 20 TB (terabytes) of information as of the date of this filing, with more expected imminently. It includes over 44,000 pages of written reports and photographs, as well as approximately 2.5 TB of surveillance and body camera videos, 15 TB of messages exchanged by the defendants via the Signal application, and other content obtained through search warrants.

(Doc. 22 at 4).

Mr. Davis and his counsel will not be able to fully master the discovery on their own, but will also need to rely on co-defendants and their counsel to help sort through the discovery. It will be necessary for Mr. Davis to communicate with his Co-Defendants in his case in order to make sure that they are aware of all of the pertinent information, and can share each other's knowledge of evidence that contradicts or places in a different context the allegations in the Indictment and the voluminous discovery. It will be necessary for Mr. Davis and his Co-Defendants to meet together not only in the presence of their attorneys but also on their own in order to fully inform themselves about the evidence in the case. Since the attorneys will not have sufficient time to meet with each other and the Defendants to go over all of the extremely voluminous discovery, it will also be necessary for the Defendants to meet with each other on their own to discuss the evidence.

## CONCLUSION

The condition of release prohibiting Mr. Davis and Co-Defendants from having any contact with each other is unnecessary, personally burdensome, and seriously impedes the ability to prepare a defense. Mr. Davis respectfully requests that this condition be stricken.

Dated: July 22, 2026

LAW OFFICE OF JORDAN S. KUSHNER

By s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
Attorney for Defendant
431 South 7th Street, Suite 2446
Minneapolis, Minnesota 55415
(612) 288-0545
jskushner@gmail.com