**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

v.

ISAAC SANT, et al.,

Defendants.

Case No.: 26-cr-115 (KMM/DTS)

# BRIEF OF *AMICI CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, THE SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, & THE CATO INSTITUTE IN SUPPORT OF DEFENDANTS' MOTION FOR DISCOVERY

Shalini Goel Agarwal*
Katie Schwartzmann*
Elizabeth Littrell*
Tobin Raju*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 163
Washington, DC 20006
Tel: (202) 579-4582
Fax: (202) 769-3176

**Motions for admission Pro Hac Vice forthcoming*

Barry M. Landy (#391307)
Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
CIRESI CONLIN LLP
225 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 361-8200
BML@ciresiconlin.com
KWW@ciresiconlin.com
JFS@ciresiconlin.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTEREST OF AMICI .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 4

ARGUMENT .......... 7

I. NSPM-7 Directs Executive Branch Agencies to Target Constitutionally Protected Activity .......... 7

A. NSPM-7 labels disfavored ideologies as "domestic terrorism" to justify sweeping investigations. .......... 8

B. The Bondi Memorandum implementing NSPM-7 confirms ideological targeting. .......... 10

C. NSPM-7 continues the administration's pattern of investigating and prosecuting its perceived political opponents for protected expression. .......... 12

II. NSPM-7 Was Used in This Case to Surveil Dissent. .......... 19

III. The Court Should Grant Defendants' Request for Additional Discovery .......... 23

CONCLUSION .......... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advocates for Human Rights v. United States Department of Homeland Security*,
820 F. Supp. 3d 789 (D. Minn. 2026) ........ 26

*Americans for Prosperity Foundation v. Bonta*,
594 U.S. 595 (2021) ........ 20, 22

*Califano v. Sanders*,
430 U.S. 99 (1977) ........ 26

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 26

*De Jonge v. Oregon*,
299 U.S. 353 (1937) ........ 20

*Edwards v. South Carolina*,
372 U.S. 229 (1963) ........ 20

*Federal Education Association v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025) ........ 28

*First Choice Women's Resource Centers, Inc. v. Davenport*,
146 S. Ct. 1114 (2026) ........ 20, 22

*Mohammed H. v. Trump*,
786 F .Supp. 3d 1149 (D. Minn. 2025) ........ 14

*In re Administrative Subpoena, 25 1431 032 to Rhode Island Hospital*,
No. 26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) ........ 28

*In re Grand Jury Subpoenas*,
No. 26-mc-43, 2026 WL 1783899 (D. Minn. June 22, 2026) ........ 14

*Jenner & Block LLP v. United States Department of Justice*,
784 F. Supp. 3d 76 (D.D.C. 2025) ........ 4

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ........ 4

*McDonough v. Anoka County*,
799 F.3d 931 (8th Cir. 2015) ........ 25

*Media Matters for America v. FTC*,
805 F. Supp. 3d 105 (D.D.C. 2025) .......... 4

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) .......... 20, 22

*National Rifle Association of America v. Vullo*,
602 U.S. 175 (2024) .......... 5, 23

*President & Fellows of Harvard College v. United States Department of Health & Human Services*,
798 F. Supp. 3d 77 (D. Mass. 2025) .......... 4

*Robles v. Noem*,
26-CV-0107, 2026 WL 555601 (D. Minn. Feb. 26, 2026) .......... 26

*Rosado v. Bondi*,
831 F. Supp. 3d 685 (N.D. Ill. 2026) .......... 1

*United States v. Abdi*,
2024 WL 323577 (D. Minn. Jan. 29, 2024) .......... 25

*United States v. Abrego Garcia*,
No. 25-cr-00115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026) .......... 27

*United States v. Carey*,
816 F. Supp. 3d 129 (D.D.C. 2026) .......... 16, 24, 25

*United States v. Kelley*,
152 F.3d 881 (8th Cir. 1998) .......... 25

*United States v. Leathers*,
354 F.3d 955 (8th Cir. 2004) .......... 24

*United States v. Meyer*,
810 F.2d 1242 (D.C. Cir. 1987) .......... 25

*United States v. Potts*,
No. 07-cr-85(1), 2008 WL 2026132 (D. Minn. May 8, 2008) .......... 24

*United States v. Rodgers*,
18 F.3d 1425 (8th Cir. 1994) .......... 25

*United States v. Russell,*
411 U.S. 423 (1973) .......... 24

*United States v. Wirth*,
No. 11-cr-256, 2012 WL 1110540 (D. Minn. Apr. 3, 2012) .................................... 24

*Volokh v. James*,
148 F.4th 71 (2d Cir. 2025) .................................................................................... 1

*West Virginia State Board of Education v. Barnette*,
319 U.S. 624 (1943) ................................................................................................ 3

**Statutes**

18 U.S.C. § 111 ...................................................................................................... 11

18 U.S.C. § 241 ...................................................................................................... 18

18 U.S.C. § 248 ...................................................................................................... 19

18 U.S.C. § 372 ...................................................................................................... 11

18 U.S.C. § 373 ...................................................................................................... 11

18 U.S.C. § 1361 .................................................................................................... 11

19 U.S.C. § 1509 .................................................................................................... 21

**Administrative Materials**

Executive Order 14341, *Prosecuting Burning of the American Flag*,
90 Fed. Reg. 42127 (Aug. 25, 2025)...................................................................... 15

Executive Order, *Designating Antifa as a Domestic Terrorist Organization*,
90 Fed. Reg. 46317 (Sep. 22, 2025) ....................................................................... 8

Memorandum from Pam Bondi, Attorney General, to All Federal Prosecutors,
Law Enforcement Agencies, and Grant-Making Components, *Implementing National Security Presidential Memorandum-7: Countering Domestic Terrorism and Organized Political Violence*
(Dec. 4, 2025), https://www.documentcloud.org/documents/26371599-bondi-memo-on-countering-domestic-terrorism-and-organized-political-violence-1/ ........................................................................ 10, 11, 12

National Security Presidential Memorandum-7, *Countering Domestic Terrorism and Organized Political Violence*,
90 Fed. Reg. 47225 (Sept. 25, 2025) ............................................................... 5, 8, 9

**Other Authorities**


Adam Goldstein, *DOJ plan to target 'domestic terrorists' risks chilling speech*, Found. for Individual Rts. & Expression (Dec. 18, 2025), https://www.fire.org/news/doj-plan-target-domestic-terrorists-risks-chilling-speech ........ 5

Alan Feuer & Minho Kim, *Judge Signals She Will Protect Abrego Garcia from Hasty Second Deportation*, N.Y. Times (Jul. 11, 2025), ........ 27

Alan Feuer, Alexandra Berzon & Ernesto Londoño, *'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters*, N.Y. Times (Mar. 19, 2026), https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html ........ 12

Alan Feur, Glenn Thrush & Michael Schmidt, *Grand Jury Rebuffs Justice Dept. Attempt to Indict 6 Democrats in Congress*, N.Y. Times (Feb. 10, 2026), https://www.nytimes.com/2026/02/10/us/politics/trump-democrats-illegal-orders-pirro.html ........ 15

Alexandra Marquez, et al., *Trump accuses Democrats of 'seditious behavior, punishable by death,' for urging military to ignore illegal orders*, NBC News (Nov. 20, 2025), https://www.nbcnews.com/politics/white-house/trump-democrats-death-penalty-sedition-military-orders-rcna245003 ........ 15

Andrew C. McCarthy, *Trump DOJ Brings a Second Bogus Comey Indictment*, Nat'l Rev. (Apr. 28, 2026), https://www.nationalreview.com/corner/trump-doj-brings-a-second-bogus-comey-indictment/ ........ 16

Brandon Drenon, *US government drops case against Democrats in 'illegal orders' video*, BBC (Feb. 24, 2026), https://www.bbc.com/news/articles/c20z7yplp7po ........ 15

Devlin Barrett, *Justice Dept. Official Pushes Prosecutors to Investigate George Soros's Foundation*, N.Y. Times (Sep. 25, 2025), https://www.nytimes.com/2025/09/ 25/us/politics/justice-trump-george-soros-foundation.html ........ 13

Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 a.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115582417825161974 ........ 15

Ernesto Londoño, *Six Prosecutors Quit Over Push to Investigate ICE Shooting Victim's Widow*, N.Y. Times (Jan. 13, 2026), https://www.nytimes.com/2026/01/13/us/prosecutors-doj-resignation-ice-shooting.html ........ 26

Faiza Patel, *Trump's Orders Targeting Anti-Fascism Aim to Criminalize Opposition*, Brennan Ctr. for Just. (Oct. 9, 2025), https://www.brennancenter.org/our-work/research-reports/trumps-orders-targeting-antifascism-aim-criminalize-opposition .................................................. 5, 8

FIRE, *Cases: Streever v. Mullin, et al.* (last visited Aug. 25, 2026), https://www.fire.org/cases/streever-v-mullin-et-al .................................................. 17

Genevieve Lakier, *The Trump Administration's War on Free Speech, the McCarthy Analogy, and the Limits of the First Amendment—Part One*, Balkinization (July 5, 2025), https://balkin.blogspot.com/2025/07/the-trump-administrations-war-on-free.html .................................................. 4

Genevieve Nadeau and Ellinor Heywood, *Holding the Line Together: Civil Society and the First Year of the Trump Administration*, Nonprofit Q. (Jan. 20, 2026), https://tinyurl.com/57xknudk .................................................. 4

Greg Jaffe, *Pentagon Opens Inquiry Into Senator Mark Kelly Over What Hegseth Calls 'Seditious' Video*, N.Y. Times (Nov. 24, 2025), https://www.nytimes.com/2025/11/24/us/politics/mark-kelly-pentagon-investigation.html .................................................. 14

Hina Shamsi, *How NSPM-7 Seeks to Use "Domestic Terrorism" to Target Nonprofits and Activists*, ACLU (Oct. 15, 2025), https://www.aclu.org/news/national-security/how-nspm-7-seeks-to-use-domestic-terrorism-to-target-nonprofits-and-activists .................................................. 5

Jacob Rosen, *Feds charge man who burned U.S. flag outside White House in protest of Trump's executive order*, CBS News (Aug. 29, 2025), https://www.cbsnews.com/news/feds-charge-man-who-burned-u-s-flag-outside-white-house-in-protest-of-trumps-executive-order/ .................................................. 15

Jim Rutenberg & John Koblin, *ABC Sues F.C.C. to Block Threat to Its TV Licenses*, N.Y. Times (Aug. 18, 2026), https://www.nytimes.com/2026/08/18/business/media/abc-fcc-lawsuit-broadcast-licenses.html .................................................. 4

Jude Joffe-Block, *Man sues DHS after agents tracked him down for sending a scathing email to ICE*, NPR (July 6, 2026), https://www.npr.org/2026/07/06/nx-s1-5883784/dhs-ice-critic-lawsuit-free-speech .................................................. 17

Michelle Breidenbach, *Federal agents track down Syracuse woman, demand she remove Instagram post about ICE*, Syracuse.com (June 27, 2026),

https://www.syracuse.com/news/2026/06/federal-agents-track-down-syracuse-woman-demand-she-remove-instagram-post-about-ice.html ..................................... 17

Minority Staff of Senate Homeland Security & Government Affairs Committee, 119th Congress, *Failure to Protect: How the Trump Administration Gutted, Politicized, and Weaponized America's Counterterrorism Infrastructure* (Aug. 5, 2026), https://www.hsgac.senate.gov/wp-content/uploads/260730_FailureToProtect_HSGAC_Report.pdf ................................ 7

Nandita Bose, et al., *Trump's war on the left: Inside the plan to investigate liberal groups*, Reuters (Oct. 9, 2025), https://www.reuters.com/legal/government/trumps-war-left-inside-plan-investigate-liberal-groups-2025-10-09/ ..................................................................... 13

Nicholas C. Anway, et al., *DOJ Issues Sweeping New Domestic Terrorism Directive: What the Attorney General's December 4 Memorandum Means for You*, Arnold & Porter (Dec. 8, 2025), https://www.arnoldporter.com/en/perspectives/blogs/enforcement-edge/2025/12/doj-issues-sweeping-new-domestic-terrorism-directive .................................................. 12

NJ.com, *Newly released bodycam footage reveals who really ordered the arrest of Newark's mayor* (YouTube, Sept. 30, 2025), https://youtu.be/iyVjV5WmLjk?si=UbbrMfAHcWVkGJGX.................................... 18

Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 p.m. ET), https://x.com/PeteHegseth/status/1993008532187148582?s=20 ................................ 15

Peter Stone, *Second indictment of ex-FBI chief James Comey signals retaliation fears*, The Guardian (May 13, 2026), https://www.theguardian.com/us-news/2026/may/13/james-comey-fbi-retaliation-fears ................................................ 16

Protect Democracy, *Tracking retaliatory use of arrests, prosecutions, and investigations by the Trump administration* (July 21, 2026), https://protectdemocracy.org/work/retaliatory-action-tracker/.................................... 14

Ryan Goodman, et al., *The "Presumption of Regularity" in Trump Administration Litigation* (4th ed.), Just Sec. (Mar. 19, 2026) https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/........................................................................................ 27

Sophie Neito-Munoz, *Judge admonishes prosecutors over handling of Newark mayor's arrest*, N.J. Monitor (May 21, 2025), https://newjerseymonitor.com/2025/05/21/judge-admonishes-prosecutors-over-handling-of-newark-mayors-arrest/ ..................................................................... 18

Tara Suter, *Charging Comey is a free speech trap: Turley*, The Hill (Apr. 29, 2026), https://thehill.com/regulation/court-battles/5854518-james-comey-indictment-free-speech/ ............ 16

Thomas E. Brzozowski, *The Bondi Memo's Quiet Rewriting of Domestic Terrorism Rules Friday*, Lawfare (Dec. 12, 2025), https://www.lawfaremedia.org/article/the-bondi-memo-s-quiet-rewriting-of-domestic-terrorism-rules ............ 10

Tom Dreisbach, *Trump has made more than 100 threats to prosecute or punish perceived enemies*, NPR (Oct. 22, 2024), https://www.npr.org/2024/10/21/nx-s1-5134924/trump-election-2024-kamala-harris-elizabeth-cheney-threat-civil-liberties ............ 13

White House, *Press Release: Trump Administration Unleashes Global Campaign to Crush Radical Left Terrorism* (July 16, 2026), https://www.whitehouse.gov/releases/2026/07/trump-administration-unleashes-global-campaign-to-crush-radical-left-terrorism/ ............ 13

## INTEREST OF AMICI[1]

**The Foundation for Individual Rights and Expression (FIRE)** is a nonpartisan nonprofit that defends the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights nationwide without regard to speakers' views through public advocacy, targeted litigation, and *amicus curiae* filings in cases implicating expressive rights. *See, e.g.*, Brief for FIRE, *et al*., as *Amici Curiae* supporting Petitioner, *First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026); Brief for FIRE, *et al*, as *Amici Curiae* supporting Plaintiff, *Anthropic PBC v. U.S. Dep't of War*, No. 26-1049 (D.C. Cir. filed Mar. 9, 2026); *Stanford Daily Publ'g Corp. v. Rubio*, No. 5:25-cv-06618 (N.D. Cal. filed Aug. 6, 2025) (counsel); *Volokh v. James*, 148 F.4th 71 (2d Cir. 2025) (counsel). FIRE's work includes protecting the right to be free from governmental retaliation for protected speech. *See, e.g.*, *Rosado v. Bondi*, 831 F. Supp. 3d 685 (N.D. Ill. 2026) (counsel); Brief for FIRE, *et al.*, as *Amici Curiae* supporting Appellees, *Los Angeles Press Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026); Brief for FIRE as *Amicus Curiae* supporting Appellant, *Stokes v. Boyce*, No. 26-60184 (5th Cir. 2026).

**The Society for the Rule of Law and Democracy, Inc.**, doing business as The Society for the Rule of Law ("SRL") is a national non-profit, non-partisan membership organization of conservative, libertarian, and right-of-center-lawyers, and others, who are

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amici* contributed money to fund this brief's preparation or submission.

dedicated to defending the constitutional principles of the rule of law, limited government, separation of powers, federalism, and democracy, regardless of politics or political affiliation. SRL was originally founded as Checks & Balances in 2018 by lawyers and former jurists who served at the highest levels in previous Republican administrations. SRL relaunched in 2023 to defend and advance these principles, including each branch's importance as a check and balance on the other branches of the federal government. This case is of central concern to the Society, because it implicates the integrity and credibility of the Department of Justice as a non-political enforcer of the law, as well as the lawful exercise of First Amendment rights.

**The Cato Institute** is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, produces the annual Cato Supreme Court Review, and files *amicus* briefs.

*Amici* file this brief in support of Defendants' motion for discovery[2] out of concern over the weaponization of federal law enforcement authority to target perceived political opposition to the current presidential administration's policies. *Amici* write to provide the

---

[2] Defendant Sant filed a motion for discovery on August 13, 2026, and that motion is referred to herein as "Defendants' motion for discovery." *See* ECF 212. Thirteen other defendants joined Sant's motion. *See* Joint Motion for Leave to Join Motion (Aug. 17, 2026), ECF 218; Motion for Leave to Join Motion (Aug. 17, 2026), ECF 219.

Court with important background to contextualize the import of the government invoking National Security Presidential Memorandum-7: Countering Domestic Terrorism and Organized Political Violence ("NSPM-7") as its justification for the investigations leading to this prosecution, and to explain why the Court should grant Defendants' request for additional disclosure that would reveal any viewpoint-based motivations that lie behind this prosecution.

## INTRODUCTION AND SUMMARY OF ARGUMENT

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Backed by the machinery of federal investigative and prosecutorial powers, the Trump administration has violated that constitutional maxim and set out to dictate orthodoxy and suppress dissent. The administration has targeted the First Amendment expression of protesters and observers,[3] civil society,[4] the free press,[5] universities,[6] and lawyers.[7] The

---

[3] *Los Angeles Press Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026) (affirming grant of preliminary injunction in part because protesters, journalists, and legal observers were likely able to establish that federal agents retaliated against them because of their presence at demonstrations against Immigration and Customs Enforcement ("ICE") immigration raids).

[4] Genevieve Nadeau and Ellinor Heywood, *Holding the Line Together: Civil Society and the First Year of the Trump Administration*, Nonprofit Q. (Jan. 20, 2026), https://tinyurl.com/57xknudk.

[5] *See, e.g.*, *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 129–38 (D.D.C. 2025) (granting a preliminary injunction on a retaliation claim because FTC's investigatory actions into Media Matters was likely unlawful retaliation for Media Matters' reporting on Elon Musk and X), *appeal dismissed per stipulation*, No. 25-5302, 2026 WL 1354245 (D.C. Cir. May 4, 2026); Jim Rutenberg & John Koblin, *ABC Sues F.C.C. to Block Threat to Its TV Licenses*, N.Y. Times (Aug. 18, 2026), https://www.nytimes.com/2026/08/18/business/media/abc-fcc-lawsuit-broadcast-licenses.html (describing ABC's lawsuit challenging FCC's retaliatory threats to its broadcasting licenses).

[6] *See, e.g.*, *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77 (D. Mass. 2025) (finding that the government decision to terminate school's funding was retaliatory and conditioning the university's funding on changes to its policies violated the First Amendment), *appeal filed*, 25-2231 (1st Cir. Dec. 31, 2025).

[7] *See, e.g.*, *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76 (D.D.C. 2025) (finding actions taken against law firm pursuant to executive were done in retaliation for firm's work on behalf of disfavored groups), *appeal filed*, No. 25-5265 (D.C. Cir. July 22, 2025).

scale of the government's assault on free expression has not been seen since the Second Red Scare.[8]

Continuing that trend, on September 20, 2025, the president issued NSPM-7 and its implementing directives, instructing federal agencies to disrupt entities that allegedly "foment political violence" and "intervene in criminal conspiracies before they result in violent political acts" or "domestic terrorism."[9] The administration designates First Amendment-protected and vaguely defined ideological beliefs as indicia of domestic terrorism, including "anti-fascism" and "anti-Americanism, anti-capitalism, and anti-Christianity."[10] NSPM-7 also warns that "extremism on migration, race, and gender; and hostility towards those who hold traditional American views on family, religion, and morality" are motivations that may "animat[e]" political violence.[11] Ultimately, NSPM-7 directs the federal government to target, investigate, and prosecute entities with disfavored political beliefs. Such "viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024).

NSPM-7's First Amendment infirmities are likely to seep into investigations that are opened pursuant to it, as many have warned.[12] The limited public disclosures here

---

[8] *See* Genevieve Lakier, *The Trump Administration's War on Free Speech, the McCarthy Analogy, and the Limits of the First Amendment—Part One*, Balkinization (July 5, 2025), https://balkin.blogspot.com/2025/07/the-trump-administrations-war-on-free.html.
[9] Nat'l Sec. Presidential Memorandum-7, *Countering Domestic Terrorism and Organized Political Violence*, 90 Fed. Reg. 47225, 47226 (Sept. 25, 2025).
[10] *Id.*
[11] *Id.*
[12] *See*, *e.g.*, Hina Shamsi, *How NSPM-7 Seeks to Use "Domestic Terrorism" to Target Nonprofits and Activists*, ACLU (Oct. 15, 2025), https://www.aclu.org/news/national-security/how-nspm-7-seeks-to-use-domestic-terrorism-to-target-nonprofits-and-activists;

confirm the investigation for this case originated under NSPM-7. Those disclosures also indicate the investigation was part of a larger strategy to target those who espoused views opposed to immigration enforcement and engaged in associational activity disfavored by the government. NSPM-7 effectively uses the domestic-terrorism label to justify criminal investigations into disfavored groups that would not otherwise be targeted. As defendants' motion for discovery explains, additional disclosure is warranted to determine the extent to which the government "target[ed] individuals based on their political beliefs and First Amendment protected" activity. ECF 212 at 22. *Amici* agree and write to make the following additional points.

*First*, NSPM-7 and its implementing directives facially and as implemented target First Amendment-protected viewpoints. It treats left-leaning political viewpoints (e.g., opposition to aggressive immigration enforcement, "radical gender ideology," "anti-Americanism") as indicia of domestic terrorism. NSPM-7 and this investigation fit a broader, well-documented pattern of the administration using criminal investigations to retaliate against its perceived opponents. *Second*, the public disclosures in this case reveal that the Department of Homeland Security ("DHS") weaponized NSPM-7 to surveil core First Amendment activity—infiltrating meetings, monitoring encrypted chats, and secretly seizing years of financial records from unions and nonprofits. This surveillance appears to

---

Adam Goldstein, *DOJ plan to target 'domestic terrorists' risks chilling speech*, Found. for Individual Rts. & Expression (Dec. 18, 2025), https://www.fire.org/news/doj-plan-target-domestic-terrorists-risks-chilling-speech; Faiza Patel, *Trump's Orders Targeting Anti-Fascism Aim to Criminalize Opposition*, Brennan Ctr. for Just. (Oct. 9, 2025), https://www.brennancenter.org/our-work/research-reports/trumps-orders-targeting-antifascism-aim-criminalize-opposition.

have been based on disfavored political viewpoints in violation of the First Amendment. *Third*, because the justification for the investigation in this prosecution rests on NSPM-7—which treats political ideology as indicia of a proclivity towards violence—and given the government's broader pattern of misconduct in other cases, Defendants have a strong basis for the additional Rule 16, *Brady*, and *Giglio* disclosures they seek. Those disclosures may show the prosecution was driven by political animus.

## ARGUMENT

### I. NSPM-7 Directs Executive Branch Agencies to Target Constitutionally Protected Activity

The NSPM-7 directive from the White House animates the prosecution in this case and is a directive designed to chill participation in protest activity, quell dissent, and silence critics of Trump administration policies under the guise of combatting terrorism.[13] The exhibits filed in support of the motion for discovery are the public's first glimpse into the workings of the dragnet mobilized under NSPM-7.[14] They are alarming and confirm the expansive and serious weaponization of federal law enforcement against U.S. residents.

---

[13] *See*, *e.g.*, Minority Staff of S. Homeland Sec. & Gov't Affs. Comm., 119th Cong., *Failure to Protect: How the Trump Administration Gutted, Politicized, and Weaponized America's Counterterrorism Infrastructure* 1 (Aug. 5, 2026), https://www.hsgac.senate.gov/wp-content/uploads/260730_FailureToProtect_HSGAC_Report.pdf (finding that "[t]he illegal designation of Antifa as a domestic terrorist organization (a designation that does not exist in law), the politically motivated National Security Presidential Memorandum 7 (NSPM-7), and the Administration's counterterrorism strategy have all further redefined terrorism and redirected counterterrorism resources away from lethal threats to the nation in favor of persecuting the President's political opponents.").

[14] *See* Status Report, *Protect Democracy v. U.S. Dep't of Treasury*, No. 25-cv-04101 (D.D.C. Aug. 20, 2026), ECF 28 (latest status report for one of several FOIA lawsuits seeking information about the ways in which NSPM-7 and executive order on Antifa are

**A. <u>NSPM-7 labels disfavored ideologies as "domestic terrorism" to justify sweeping investigations.</u>**

On September 22, 2025, President Trump laid the groundwork for targeting individuals and entities based on ideology when he issued an Executive Order designating "Antifa"—which experts describe as a diverse ideology held by people who are anti-fascism,[15] not a specific entity—as a domestic terrorist threat.[16] Three days later, the president issued NSPM-7, directing a whole-of-government effort to "investigate, prosecute, and disrupt entities and individuals engaged in acts of political violence and intimidation designed to suppress lawful political activity or obstruct the rule of law." 90 Fed. Reg. at 47226. It also directs the National Joint Terrorism Task Forces and its local offices to investigate "institutional and individual funders, and officers and employees of organizations" that "sponsor, or otherwise aid and abet" the alleged "political violence and intimidation." *Id.*

Having designated "Antifa" as a domestic terrorist threat, NSPM-7 identifies opposition to fascism as the common denominator and "organizing rallying cry used by domestic terrorists to wage a violent assault against democratic institutions, constitutional rights, and fundamental American liberties." *Id.* at 47225-26. It designates certain political and religious viewpoints as indicators of Antifa-alignment and "domestic terrorism." *Id.* It also specifically identifies "anti-Americanism, anti-capitalism, and anti-Christianity" as

being used to target nonprofit organizations showing no documents have yet been released).

[15] Patel, *supra* note 12.

[16] Exec. Order, *Designating Antifa as a Domestic Terrorist Organization*, 90 Fed. Reg. 46317 (Sep. 22, 2025).

well as opposition to aggressive immigration enforcement, beliefs about systemic racism, and support for LGBTQ+ rights—positions it terms "extremism on migration, race, and gender; and hostility towards those who hold traditional American views on family, religion, and morality"—as "common threads animating this violent conduct." *Id*.

Having labeled such political viewpoints indicia of domestic terrorism, NSPM-7 orders "a national strategy to investigate and disrupt" these "networks" "so that law enforcement can intervene in criminal conspiracies before they result in violent political acts." *Id* at 47226. It flags an alarming amount of constitutionally protected activity for investigation, asserting that terroristic campaigns can begin with "dehumanizing" specific individuals (such as ICE agents) in online chat forums, in-person meetings, social media, and educational institutions. *Id.* at 47225. It instructs the Attorney General to prioritize investigations of "politically motivated terrorist acts" including "organized doxing campaigns,"—defined as "private or identifying information" being "exposed to the public"—as well as undefined "rioting" and "civil disorder." *Id.* at 47225–27. It also elevates traditional misdemeanor state crimes, such as trespass, destruction of property, and assault into a federal domestic terrorism investigation because of the political viewpoint of the accused. *Id.* at 47227. NSPM-7 thus calls for law enforcement surveillance of individuals holding particular viewpoints and ideologies by falsely linking those political ideas to political violence.

### B. <u>The Bondi Memorandum implementing NSPM-7 confirms ideological targeting.</u>

The Attorney General quickly acted on the presidential directive in NSPM-7 to implement a national strategy to investigate and prosecute this newly envisaged and ideologically biased definition of "political violence." On December 4, 2025, then-Attorney General Pamela Bondi issued a memorandum to all federal prosecutors and law enforcement agencies with directives on implementing NSPM-7 (the "Bondi Memorandum").[17] It frames NSPM-7 as a directive to "the federal government to implement a focused strategy to root out all culpable participants—including organizers and funders—in all domestic terrorism activities."[18]

The Bondi Memorandum first defines "domestic terrorism" in relation to criminal conduct involving acts "dangerous to human life that *appear to be* intended to intimidate a civilian population" or influence the "policy" or "conduct of government" through intimidation, coercion, mass destruction, assassination, or kidnapping.[19] It then greatly expands this definition to sweep in "organized doxing of law enforcement," "violent efforts to shut down immigration enforcement," and "targeting of public officials or other political

---

[17] Thomas E. Brzozowski, *The Bondi Memo's Quiet Rewriting of Domestic Terrorism Rules Friday*, Lawfare (Dec. 12, 2025), https://www.lawfaremedia.org/article/the-bondi-memo-s-quiet-rewriting-of-domestic-terrorism-rules.

[18] Memorandum from Pam Bondi, Att'y Gen., to All Fed. Prosecutors, L. Enf't Agencies, and Grant-Making Components, *Implementing National Security Presidential Memorandum-7: Countering Domestic Terrorism and Organized Political Violence* 1 (Dec. 4, 2025), https://www.documentcloud.org/documents/26371599-bondi-memo-on-countering-domestic-terrorism-and-organized-political-violence-1/.

[19] *Id*. (emphasis added) (citing 18 U.S.C. § 2331(5);6 U.S.C. § 101(18) ("defining terrorism in the context of homeland security to include acts 'potentially destructive of critical infrastructure or key resources'")).

actors."[20] As with NSPM-7, the Bondi Memorandum states that many of these acts of "domestic terrorism" are animated by "extreme viewpoints on immigration, radical gender ideology, and anti-American sentiment."[21] The Memorandum instructs that common "political and social agendas" of domestic terrorists include "opposition to law and immigration enforcement; extreme views in favor of mass migration and open borders; adherence to radical gender ideology, anti-Americanism, anti-capitalism, or anti-Christianity;" and "hostility towards traditional views on family, religion, and morality."[22]

The Bondi Memorandum implements the constitutional infirmities directed by NSPM-7. *First*, it designates certain political viewpoints as indicia of antifa and domestic terrorism. *Next*, it mandates an "exhaustive investigation" if there is suspicion that "domestic terrorism" is afoot—though it notably does not require agents to have actual suspicion of violence or of a predilection toward violence to initiate an investigation.[23] *Then*, it directs the Department of Justice to prosecute all crimes encountered in the course of a domestic terrorism investigation, leveraging investigation of "terrorism" to ferret out criminal activity that agents otherwise would not have had reasonable suspicion or probable cause to investigate, and instructing prosecutors to be "particularly mindful" of a list of potential charges that may be applied against targeted groups, including those at issue in this prosecution (18 U.S.C. § 111, 18 U.S.C. § 372, 18 U.S.C. § 373, 18 U.S.C. §

---

[20] *Id*.
[21] *Id*. at 2.
[22] *Id*.
[23] *Id*.

1361).[24] That is, under the rubric of preventing "domestic terrorism" and "political violence," the administration uses disfavored ideologies to justify criminal investigations into activities that otherwise could not be targeted by law enforcement. Although the Bondi Memorandum includes a perfunctory endnote disclaiming investigations based solely on First Amendment activities,[25] its overall aim is apparent and its impact on protected speech is plain.[26]

### C. <u>NSPM-7 continues the administration's pattern of investigating and prosecuting its perceived political opponents for protected expression.</u>

Public reporting makes clear that NSPM-7 is part of an intentional campaign by the administration to characterize political opponents and left-leaning positions as precursors to political violence or domestic terrorism to justify sweeping investigations. In a January 2026 conference call, Associate Deputy Attorney General Aakash Singh explained that "coordinators" in each U.S. Attorneys' Office would be responsible for using NSPM-7 to target protesters and ordered federal prosecutors to "hound" agents into charging protesters.[27] The FBI has also set up an "NSPM-7 mission center in Washington to oversee

---

[24] *Id*. at 3.
[25] *Id.* at 7 n.2.
[26] *See* Nicholas C. Anway, et al., *DOJ Issues Sweeping New Domestic Terrorism Directive: What the Attorney General's December 4 Memorandum Means for You*, Arnold & Porter (Dec. 8, 2025), https://www.arnoldporter.com/en/perspectives/blogs/enforcement-edge/2025/12/doj-issues-sweeping-new-domestic-terrorism-directive (explaining that "by defining the 'Common Characteristics of Domestic Terrorists and Organizations' in this manner, individuals and organizations that disagree with the Trump administration undoubtedly will be concerned about federal scrutiny").
[27] Alan Feuer, Alexandra Berzon & Ernesto Londoño, *'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters*, N.Y. Times (Mar. 19, 2026), https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html.

investigations into left-wing movements."[28] The same day that the president signed NSPM-7, the *New York Times* reported a Justice Department directive to investigate the Open Society Foundations for providing grants, research initiatives, and advocacy programs that promote human rights, equity, and justice reform—ideologies now identified by NSPM-7 as "anti-American," and as "extremism on migration, race, and gender."[29] Open Society Foundations is not alone. The White House has specifically named additional targets to be investigated including ActBlue, Indivisible, the Coalition for Humane Immigrant Rights, Jewish Voice for Peace, and IfNotNow.[30] Homeland Security Advisor Stephen Miller recently broadly characterized leftist ideologies as violent "enemies of civilization,"[31] and Treasury Secretary Bessent vowed to "dismantle the financial infrastructure sustaining left-wing terrorism . . . however respectable their fronts may be."[32]

This is not the first time the administration has weaponized criminal laws based on ideological animus. President Trump ran for office in 2024 on a promise to use federal law

---

[28] *Id.*

[29] Devlin Barrett, *Justice Dept. Official Pushes Prosecutors to Investigate George Soros's Foundation*, N.Y. Times (Sep. 25, 2025), https://www.nytimes.com/2025/09/25/us/politics/justice-trump-george-soros-foundation.html.

[30] Nandita Bose, et al., *Trump's war on the left: Inside the plan to investigate liberal groups*, Reuters (Oct. 9, 2025), https://www.reuters.com/legal/government/trumps-war-left-inside-plan-investigate-liberal-groups-2025-10-09/ (the groups targeted are generally considered to advocate for progressive and left-leading causes or political candidates).

[31] White House, *Press Release: Trump Administration Unleashes Global Campaign to Crush Radical Left Terrorism* (July 16, 2026), https://www.whitehouse.gov/releases/2026/07/trump-administration-unleashes-global-campaign-to-crush-radical-left-terrorism/.

[32] *Id*.

enforcement as a tool for seeking retribution against his perceived political opponents.[33] Since January 2025, the administration has moved to fulfill that promise. The administration has a "well-established history of using criminal investigations to retaliate against and pressure the President's political and personal adversaries," as this Court recently observed. *See In re Grand Jury Subpoenas*, No. 26-mc-43, 2026 WL 1783899, at *7 (D. Minn. June 22, 2026) (quashing six grand jury subpoenas to various Minnesota and Twin Cities officials); *accord Mohammed H. v. Trump*, 786 F .Supp. 3d 1149, 1153 (D. Minn. 2025) (in a challenge to ICE's detention and deportation of noncitizens because of their speech, finding that "[t]he record reflects a coordinated series of executive actions—retaliatory in focus, opaque in their justification, and deficient in process—that collectively offend foundational constitutional protections"), *appeal filed*, No. 25-2516 (8th Cir. July 31, 2025). Investigations and prosecutions by the Trump administration for speech opposing the president's policies are many and include:[34]

- <u>Sen. Mark Kelly and Former Military and Intelligence Community Lawmakers</u>: On November 24, 2025, the Pentagon announced a review of "serious allegations of misconduct" against Kelly, a retired U.S. Navy Captain and current U.S. Senator, for a video correctly reminding military personnel that they are not required to

[33] Tom Dreisbach, *Trump has made more than 100 threats to prosecute or punish perceived enemies*, NPR (Oct. 22, 2024), https://www.npr.org/2024/10/21/nx-s1-5134924/trump-election-2024-kamala-harris-elizabeth-cheney-threat-civil-liberties.

[34] *See also* ECF 212 at 15-17; Protect Democracy, *Tracking retaliatory use of arrests, prosecutions, and investigations by the Trump administration* (July 21, 2026), https://protectdemocracy.org/work/retaliatory-action-tracker/.

follow unlawful orders.[35] In January 2026, Rep. Jason Crow, Rep. Maggie Goodlander, Rep. Chrissy Houlahan, Sen. Elissa Slotkin, and Rep. Chris Deluzio, all Democratic lawmakers, announced that they were also under investigation for their participation in the same video. The president accused the legislators of "seditio[n]" and suggested they should be jailed or possibly executed, saying "Their words cannot be allowed to stand."[36] Defense Secretary Hegseth referred to the lawmakers as "the Seditious Six."[37] A grand jury returned a no true bill and U.S. Attorney Jeanine Pirro eventually dropped the investigation into the lawmakers.[38]

- Jan Carey: On August 25, 2025, President Trump issued an executive order condemning the burning of the American flag and directed the Department of Justice to prosecute those who burn the flag.[39] Jan Carey, a Bronze Star-decorated

[35] Greg Jaffe, *Pentagon Opens Inquiry Into Senator Mark Kelly Over What Hegseth Calls 'Seditious' Video*, N.Y. Times (Nov. 24, 2025), https://www.nytimes.com/2025/11/24/us/politics/mark-kelly-pentagon-investigation.html.

[36] Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 a.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115582417825161974; Alexandra Marquez, et al., *Trump accuses Democrats of 'seditious behavior, punishable by death,' for urging military to ignore illegal orders*, NBC News (Nov. 20, 2025), https://www.nbcnews.com/politics/white-house/trump-democrats-death-penalty-sedition-military-orders-rcna245003.

[37] Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 p.m. ET), https://x.com/PeteHegseth/status/1993008532187148582?s=20.

[38] Alan Feur, Glenn Thrush & Michael Schmidt, *Grand Jury Rebuffs Justice Dept. Attempt to Indict 6 Democrats in Congress*, N.Y. Times (Feb. 10, 2026), https://www.nytimes.com/2026/02/10/us/politics/trump-democrats-illegal-orders-pirro.html; Brandon Drenon, *US government drops case against Democrats in 'illegal orders' video*, BBC (Feb. 24, 2026), https://www.bbc.com/news/articles/c20z7yplp7po.

[39] Exec. Order 14341, *Prosecuting Burning of the American Flag*, 90 Fed. Reg. 42127 (Aug. 25, 2025).

Army veteran who served in Iraq and Afghanistan, was indicted after he set a flag on fire in a park across from the White House to protest the president's executive order.[40] Carey moved to dismiss, asserting that he was subjected to vindictive prosecution because of his First Amendment-protected expression. *United States v. Carey*, 816 F. Supp. 3d 129, 134–35 (D.D.C. 2026). Judge Boasberg found that Carey easily cleared the bar to obtain discovery in support of his vindictive prosecution defense. *Id.* at 144 (finding a "colorable claim that the Government is punishing Carey for exercising his First Amendment rights"). The government subsequently dismissed the charges before providing that discovery. Motion to Dismiss, *United States v. Carey*, No. 25-cr-00251 (D.D.C. Apr. 8, 2026), ECF 27.

- James Comey: On April 28, 2026, former FBI Director Comey was indicted for posting a picture of a seashell formation on social media that spelled out the phrase "86 47," which the government claims is coded language for a threat against the president. *See* Indictment, *United States v. Comey*, No. 26-cr-00016 (E.D.N.C. Apr. 28, 2026), ECF 1. The indictment has been widely criticized as baseless and retaliatory[41] and is the subject of a pending motion to dismiss for vindictive and

[40] Jacob Rosen, *Feds charge man who burned U.S. flag outside White House in protest of Trump's executive order*, CBS News (Aug. 29, 2025), https://www.cbsnews.com/news/feds-charge-man-who-burned-u-s-flag-outside-white-house-in-protest-of-trumps-executive-order/.

[41] *See, e.g.*, Andrew C. McCarthy, *Trump DOJ Brings a Second Bogus Comey Indictment*, Nat'l Rev. (Apr. 28, 2026), https://www.nationalreview.com/corner/trump-doj-brings-a-second-bogus-comey-indictment/; Peter Stone, *Second indictment of ex-FBI chief James Comey signals retaliation fears*, The Guardian (May 13, 2026), https://www.theguardian.com/us-news/2026/may/13/james-comey-fbi-retaliation-fears; Tara Suter, *Charging Comey is a free speech trap: Turley*, Hill (Apr. 29, 2026),

selective prosecution. Motion to Dismiss, *United States v. Comey*, No. 26-cr-00016 (E.D.N.C. July 28, 2026), ECF 35.

Retaliatory investigation and prosecution of First Amendment activity extends specifically to opposition to the administration's immigration enforcement activities, and even reporting on that opposition, including:

- David Streever and Paigelynne Gonyea: After ICE agents shot and killed Alex Pretti in Minneapolis, David Streever—a New York-based journalist—sent then-acting Director of ICE Todd Lyons an email criticizing him and his agency. Five months later, ICE initiated an investigation into Streever. Agents went to his home and left with his wife a "warning notice" that he may be in violation of federal law and should "remove and/or discontinue" his speech.[42] ICE agents later tracked Streever and his daughter to a New York City hotel they were staying in on their way back from an international flight.[43] Represented by *amicus* FIRE, Streever is suing to vindicate his First Amendment rights.[44] ICE agents issued a similar warning notice to Paigelynne Gonyea months after one of her social media posts named the ICE

---

https://thehill.com/regulation/court-battles/5854518-james-comey-indictment-free-speech/.

[42] Complaint at 1–2, 14, *Streever v. Mullin*, No. 26-cv-02356 (D.D.C. July 6, 2026), ECF 1.

[43] *Id.* at 2

[44] Jude Joffe-Block, *Man sues DHS after agents tracked him down for sending a scathing email to ICE*, NPR (July 6, 2026), https://www.npr.org/2026/07/06/nx-s1-5883784/dhs-ice-critic-lawsuit-free-speech; *see also* FIRE, *Cases: Streever v. Mullin, et al.* (last visited Aug. 25, 2026), https://www.fire.org/cases/streever-v-mullin-et-al.

agent who shot protester Renee Good.[45] The agents tracked her down to a library where she was working as a poll worker and asked her to remove the post.[46]

- Mayor Ras Baraka: On May 9, 2025, Baraka, the Democratic Mayor of Newark, New Jersey, was arrested and detained by federal officials for attempting to conduct oversight of an ICE facility after having publicly criticized the conditions there. Body camera evidence reveals a special agent saying "We are arresting the mayor right now, per the deputy attorney general of the United States."[47] The United States Attorney's Office for the District of New Jersey moved to drop federal trespassing charges against Baraka ten days after his arrest.[48] U.S. Magistrate Judge André Espinosa called the charges "a worrying misstep" before admonishing the U.S. Attorney's Office to let the incident "serve as an inflection point and a reminder to uphold your solemn oath to the people of this district and to your client, justice itself, and ensure that every charge brought is a product of rigorous investigation."[49]

- Don Lemon and Georgia Fort: After several failed attempts, federal prosecutors indicted journalists Don Lemon and Georgia Fort in connection with their reporting

[45] Michelle Breidenbach, *Federal agents track down Syracuse woman, demand she remove Instagram post about ICE*, Syracuse.com (June 27, 2026), https://www.syracuse.com/news/2026/06/federal-agents-track-down-syracuse-woman-demand-she-remove-instagram-post-about-ice.html.
[46] *Id.*
[47] NJ.com, *Newly released bodycam footage reveals who really ordered the arrest of Newark's mayor,* at 0:41 (YouTube, Sept. 30, 2025), https://youtu.be/iyVjV5WmLjk?si=UbbrMfAHcWVkGJGX.
[48] Sophie Neito-Munoz, *Judge admonishes prosecutors over handling of Newark mayor's arrest*, N.J. Monitor (May 21, 2025), https://newjerseymonitor.com/2025/05/21/judge-admonishes-prosecutors-over-handling-of-newark-mayors-arrest/.
[49] *Id.*

on a protest against ICE that interrupted services at Cities Church in St. Paul, Minnesota. *See* Motion to Dismiss of Georgia Ellyse Fort at 26–34, *United States v. Levy Armstrong*, No. 26-cr-00025 (D. Minn. Aug. 6, 2026), ECF 592. They are charged with being part of a conspiracy against rights, 18 U.S.C. § 241, and violating the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248. Superseding Indictment, *United States v. Levy Armstrong*, No. 26-cr-00025 (D. Minn. Feb. 26, 2026), ECF 144. The basis for the charges against Lemon and Fort are routine newsgathering activities protected by the First Amendment: meeting and travelling with demonstrators to report on their effort to interrupt a church service where the demonstrators believed an immigration official served as pastor, interviewing those in attendance, and livestreaming the events. *Id.* Lemon and Fort have both moved to dismiss the indictment on First Amendment grounds and as vindictive prosecutions. Motion to Dismiss of Georgia Ellyse Fort, *supra*.

## II. <u>NSPM-7 Was Used in This Case to Surveil Dissent</u>

The expansive scope of the investigations undergirding this prosecution confirms the government used NSPM-7 here to launch broad investigations and engage in vast surveillance targeting disfavored viewpoints and associational activity. Publicly filed discovery confirms that DHS launched a sweeping surveillance campaign against community groups and individuals protesting federal immigration enforcement, a disfavored viewpoint identified in NSPM-7 and the Bondi Memorandum. Through initiatives dubbed "Operation Keyhole," "Operation Puppet Master," and "Project Whipple Shield," undercover agents infiltrated virtual and in-person meetings at local churches,

libraries, and schools, and monitored encrypted Signal chats. DHS agents posed as members of the community to infiltrate events organized by community groups, ECF 212-25, including legal observer training, ECF 212-12, training on best practices for observing ICE activities, *id.*, and protests, ECF 212-22. Agents compiled detailed dossiers on meeting participants, documented license plates in church parking lots, and conducted background research on some meeting attendees for whom there was no suspicion of illegality or violence. ECF 212-17; ECF 212-21. In short, NSPM-7 was used to surveil people gathering to object to ICE practices.

The First Amendment protects the right to dissent and protest government action. Indeed, free speech "best serves its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Edwards v. South Carolina*, 372 U.S. 229, 237 (1963) (citation modified). "The right of peaceable assembly is a right cognate to . . . free speech . . . and is equally fundamental." *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). The Supreme Court has also "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (citation modified). Government attempts to burden or suppress dissident expression must be examined with suspicion, and "government actions tending to 'curtai[l] the freedom to associate' warrant 'the closest scrutiny' under the First Amendment." *First Choice Women's Res. Ctrs.*, 146 S. Ct. at 1122 (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460–61 (1958)). It is highly problematic under multiple First Amendment legal theories for the government to target individuals because

of their political beliefs and associations, without concrete suspicion of wrongdoing. Yet that is how NSPM-7 and its implementing directives seem to have been deployed here.

In addition to the extensive in-person surveillance conducted in this matter, DHS also secretly obtained years of private financial records from several prominent labor unions and progressive nonprofits—none of which has been accused of any crime. DHS initiated Project Whipple Shield pursuant to NSPM-7 ostensibly to uncover the "funding sources, organizational structures, and predicate actions" behind the campaigns supporting "acts of violence, destruction of property, intimidation of federal officers and employees, and attempts to impede federal operations." ECF 212-1; 212-2. Without the knowledge of the targeted entities, DHS sought over three-years worth of financial records for the labor unions Service Employees International Union, Communications Workers of America, and International Federation of Professional Technical Engineers; and targeted financial records from progressive groups Sunrise Movement and Voices for Racial Justice.[50] DHS obtained records including unions' "debits and credits to include annuity payments, strike payments, strike supplies, investments, union member dues, retiree dues, medical expenses, and pension fund expenses." ECF 212-5 at 3. The full extent of the financial details DHS obtained are unclear, but they appear to contain a sprawling range of information revealing the identities and finances of members of the groups, and their

[50] DHS appears to have obtained many of these financial records through the improper use of administrative subpoenas issued pursuant to 19 U.S.C. § 1509. *See* ECF 212-5; 212-6; 212-8. Section 1509 authorizes summonses only to compel production of records bearing on financial liability for imported merchandise, which has nothing to do with the stated purpose of DHS's investigation.

donors. Implementing the chilling language of NSPM-7, the report concludes that the "financial investigation involving protest domestic terrorist financing continues," ECF 212-5, although there is no evidence of any conduct remotely resembling terrorism on the part of any of the surveilled groups.

Indiscriminately amassing this data is a grave violation of the right to associational privacy. *See Ams. for Prosperity Found.*, 594 U.S. at 606; *NAACP*, 357 U.S. at 462. The Supreme Court has repeatedly stressed the "[i]nviolability of privacy in group association" because it may be "indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP*, 357 U.S. at 462. As the Supreme Court recently warned: "Strip away the ability of individuals to work together free from governmental oversight and intrusion, and the freedom to associate may become no freedom at all—individuals deterred, groups diminished, and their protected advocacy suppressed." *First Choice Women's Res. Ctrs.*, 146 S. Ct. at 1123.

Despite its stated purpose to identify "violent opportunists and agitators" and their funding sources, the filed discovery instead indicates the investigations cast an alarmingly broad shadow of surveillance over groups simply because they were organizing to protest the administration's immigration policies—a disfavored viewpoint identified in NSPM-7. Records show that many surveilled organizations stressed the importance of nonviolence and warned against any interference with law enforcement activities in multiple training sessions. *See, e.g.*, ECF 212-12 at 2 (summary of Dec. 3, 2025 ICEWatch training "urg[ing] participants to observe nonviolently and obey law enforcement commands" and Dec. 7, 2025 legal observer training advising the same). The public discovery shows broad

surveillance of mostly anodyne interactions, like a member of one targeted group starting a "coffee club" to allow people to get to know each other better. ECF 212-16 at 3. Other reports actually confirm that DHS agents observed no unlawful activity at surveilled events. ECF 212-12 (Dec. 3, 2025 ICEWatch training); ECF 212-12 (Dec. 7, 2025 Upstander Legal Observer Training); ECF 212-25 (Jan. 12, 2026 Defend612 Virtual Zoom Meeting); ECF 212-13 (Feb. 10, 2026 Hunter College Virtual Panel Discussion). Yet the surveillance of many groups continued unabated.

While evidence of any possible wrongdoing by the targeted groups is scant in the public investigatory reports, the analysis on their political philosophies, organizational slogans, and ideological frameworks is extensive. *See, e.g.*, ECF 212-14, 212-16, 212-22, 212-25. Together, the public investigatory reports paint a picture of the government specifically targeting disfavored viewpoints and groups affiliated with those views—just as NSPM-7 directs. Such viewpoint discrimination "is uniquely harmful to a free and democratic society" and presumptively unconstitutional. *See Vullo*, 602 U.S. at 187–88. The full extent of the government's viewpoint and retaliatory motivations for initiating the investigation that led to this prosecution may not become clear until additional disclosures are provided, and Defendants should have the right to access those materials as part of the defense in this case.

## III. <u>The Court Should Grant Defendants' Request for Additional Discovery</u>

In light of the originating authority for the investigation in this prosecution and the government's conduct in other investigations and prosecutions, there is a good basis to grant Defendants access to the additional disclosures they seek. Defendants' motion

requests disclosure of several categories of information that may "constitute additional evidence of DHS targeting individuals based on their political beliefs and First Amendment protected conduct." ECF 212 at 22. Defendants' move pursuant to Federal Rule of Criminal Procedure 16, *Brady*, and *Giglio*. These distinct disclosure regimes overlap to require production of items material to the preparation of a defense or exculpatory in nature. *See United States v. Wirth*, No. 11-cr-256, 2012 WL 1110540, at *3 (D. Minn. Apr. 3, 2012). The motion for discovery also seeks disclosure in support of anticipated motions for selective/vindictive prosecution and outrageous government conduct, which generally require a showing that a prosecution is driven by the motivation to punish the exercise of constitutional rights or otherwise amounts to a due process violation.[51] Discovery showing that the government's actions here were motivated by political animus or viewpoint discrimination are material to Defendants' defense of this prosecution for all of the reasons articulated in Defendants' motion, ECF 212 at 20-26, including their relevance, exculpatory character, use as impeachment material, and in support of motions to dismiss.

[51] *See United States v. Russell,* 411 U.S. 423, 431–32 (1973) (explaining that the Due Process Clause prohibits prosecutions arising from government conduct "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."); *United States v. Leathers*, 354 F.3d 955, 963 (8th Cir. 2004) (explaining that a selective prosecution defense requires a showing that others similarly situated have not been prosecuted for similar conduct and the prosecution was motivated by the exercise of constitutional rights); *United States v. Potts*, No. 07-cr-85(1), 2008 WL 2026132, at *4 (D. Minn. May 8, 2008) ("[A]n indictment may be dismissed for violating a defendant's due process rights if the prosecution is vindictive."); *United States v. Carey*, 816 F. Supp. 3d 129, 139 (D.D.C. 2026) (explaining that vindictive prosecution doctrine prevents "the Government from using prosecutions to deter people from exercising their rights").

By the government's own admission, it opened the investigation in this case pursuant to NSPM-7, ECF 212-2, which facially and in its implementing directives instructs agents to initiate investigations based upon political ideology, and to use that ideology as indicia of wrongdoing. That is antithetical to the First Amendment, the Fourth Amendment, and our tradition of the impartial administration of justice. The existing public disclosures in this case indicate that the government engaged in exactly that sort of ideological targeting, infiltrating meetings and subpoenaing records based seemingly exclusively on political animus. *See supra* Part II. The exhibits to Defendants' motion for discovery are, at a minimum, sufficient to "raise a significant doubt that the government's decision to prosecute was vindictive'" to warrant discovery on the government's prosecutorial decisions. *United States v. Abdi*, 2024 WL 323577, at *4 (D. Minn. Jan. 29, 2024) (quoting *United States v. Kelley*, 152 F.3d 881, 886 (8th Cir. 1998)); *Carey*, 816 F. Supp. 3d at 144 (granting discovery for vindictive prosecution defense because of a "colorable claim that the Government is punishing [defendant] for exercising his First Amendment rights"). Additional disclosures will help confirm whether the motivation for this prosecution was to punish disfavored viewpoints or actual wrongdoing.[52]

[52] Selective and vindictive prosecution defenses can be established through either direct or circumstantial evidence that the prosecution was "intended to punish the defendant for the exercise of a legal right." *United States v. Rodgers*, 18 F.3d 1425, 1429 (8th Cir. 1994) (citation omitted). Furthermore, "[t]he Supreme Court's decisions concerning vindictive prosecution have focused on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor." *United States v. Meyer*, 810 F.2d 1242, 1248 (D.C. Cir. 1987).

The government opposes Defendants' request for additional disclosure in part because prosecutors' charging decisions are entitled to deference. *See* ECF 227 at 27. While, in most cases, the "presumption of regularity" supports prosecutorial decisions, *McDonough v. Anoka Cnty.*, 799 F.3d 931, 948 (8th Cir. 2015), when the government's actions are infected with "bad faith or improper behavior," that presumption evaporates, *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The initiation of an investigation based upon political animus is undertaken in bad faith and is not entitled to a presumption of regularity. Moreover, courts across the country have recognized that the presumption of regularity no longer applies given the pattern of vindictive and politically motivated prosecutions, coupled with a staggering number of misrepresentations and departures from norms, pursued by the administration since January 20, 2025.[53]

This erosion of trust includes courts in this district. In one recent order, then-Chief Judge Patrick J. Schiltz explained that "[t]he Court is not aware of another occasion in the history of the United States in which a federal court has had to threaten contempt—again and again and again—to force the *United States government* to comply with court orders." *Robles v. Noem*, 26-CV-0107, 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026)

[53] In addition to directing political appointees and career prosecutors to pursue questionable indictments, the administration has fired or forced out career prosecutors for refusing to bring vindictive prosecutions or complying with their duty of candor to the court. *See, e.g.*, Ernesto Londoño, *Six Prosecutors Quit Over Push to Investigate ICE Shooting Victim's Widow*, N.Y. Times (Jan. 13, 2026), https://www.nytimes.com/2026/01/13/us/prosecutors-doj-resignation-ice-shooting.html (describing the resignation of six career prosecutors after they refused to investigate the widow of Renee Good).

(documenting 210 court orders ICE violated in 143 habeas cases); *see also Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, 820 F. Supp. 3d 789, 793, 795 (D. Minn. 2026) (government's account was "belied by the record" and supported by "threadbare declarations generally asserting, without examples or evidence," while "Plaintiffs' declarations provide specifics of the opposite"). According to one study, between January 2025 and March 2026, courts have expressed concern over compliance with judicial orders in more than 30 cases, expressed distrust in information presented and representations made by government attorneys in 90 cases, and found arbitrary and capricious action by the government in 91 cases.[54]

This pattern of misconduct has led many judges to conclude that the government has forfeited the entitlement to deference in the execution of its core functions. As one federal judge frankly told DOJ attorneys in a hearing related to Kilmar Abrego Garcia: "You have taken the presumption of regularity and you've destroyed it in my view."[55] In connection with the failed prosecution of protesters—including several Democratic politicians—known as the "Broadview Six," Judge April M. Perry admonished the DOJ attorneys, saying: "I have never seen the types of prosecutorial behavior before a grand jury that I saw in those transcripts," and indicated that the government's conduct suggested

[54] Ryan Goodman, et al., *The "Presumption of Regularity" in Trump Administration Litigation* (4th ed.), Just Sec. (Mar. 19, 2026) https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/.

[55] Alan Feuer & Minho Kim, *Judge Signals She Will Protect Abrego Garcia from Hasty Second Deportation*, N.Y. Times (Jul. 11, 2025), https://www.nytimes.com/2025/07/11/us/politics/abrego-garcia-deportation-judge-protection-trump.html.

the prosecution might be vindictive. *See* Motion Pursuant to Hyde Amendment at 10–11, *United States v. Rabbitt*, No. 25-cr-693 (N.D. Ill. June 2, 2026), ECF 201 (describing hearing on a motion to disclose grand jury transcripts).[56] Given this background and the circumstances of the investigation underlying this prosecution, the government's assertions that the withheld material does not contain exculpatory material is due no deference.

---

[56] *See also*, *e.g.*, *United States v. Abrego Garcia*, No. 25-cr-00115, 2026 WL 1454303, at *12 (M.D. Tenn. May 22, 2026) (dismissing indictment based on selective prosecution, noting that the evidence "sadly reflects an abuse of prosecuting power."); *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 89–92 (D.D.C. 2025), *appeal filed* (D.C. Cir. Aug. 20, 2025) (collecting cases examining the erosion of the presumption of regularity since January 20, 2025); Order to Show Cause at 2, *Singh v. Tsoukaris*, No. 26-cv-01531 (D.N.J. Feb. 20, 2026), ECF 10 (finding that "the presumption of regularity and integrity previously and routinely afforded to the Executive branch and the United States Attorney's Office has been undeniably eroded in this jurisdiction and across the country"); *In re Admin. Subpoena, 25 1431 032 to R.I. Hosp.*, No. 26-mc-0007, 2026 WL 1392565, at *10 (D.R.I. May 14, 2026) (finding that the presumption of regularity "no longer holds" and finding that "the discrepancy between the honorable conduct expected of federal prosecutors and DOJ's tactics in this case is unsettling.").

## CONCLUSION

For all the foregoing reasons, *amici* respectfully urge the Court to grant Defendants' motion for discovery.

Dated: August 25, 2026

/s/ *Kyle W. Wislocky*
Barry M. Landy (#391307)
Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
CIRESI CONLIN LLP
225 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 361-8200
BML@ciresiconlin.com
KWW@ciresiconlin.com
JFS@ciresiconlin.com

*Counsel for Amici Curiae*

Shalini Goel Agarwal*
Katie Schwartzmann*
Elizabeth Littrell*
Tobin Raju*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 163
Washington, DC 20006
Tel: (202) 579-4582
Fax: (202) 769-3176

**Motions for admission Pro Hac Vice forthcoming*