UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-115 (KMM/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

ISAAC SANT, ET AL.,

Defendants.

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY UNDER RULE 16 AND *BRADY/GIGLIO* (ECF NO. 212)**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Special Assistant United States Attorney Sommer Honeycutt, hereby files its supplemental brief on the Government's consolidated response to the Defendants Motion for Discovery Under Rule 16 and Brady/Giglio (ECF No. 212).

## I. BACKGROUND

During oral arguments at the motion hearing held on August 27, 2026, it became clear how important "Operation Keyhole" is to the defendants' motion for discovery.[1] As such, the purpose of this supplemental briefing is to provide greater context to the issue of discoverable materials and to provide context for the Court to

[1] During defenses' oral argument, much latitude was given to the characterization of "Operation Keyhole." As a point of proffer and after discussing the functional purpose of "Operation Keyhole" many of the arguments proffered by the defendants' inadvertently mischaracterized "Operation Keyhole."

determine if the defense's motion for discovery, as it pertains to Operation Keyhole, has merit.

On September 2, 2026, the court granted the Government's request for supplemental briefing as to this issue. (ECF No. 259.) This, in turn, is the Government's supplement brief outlining the nature and functionality of "Operation Keyhole," its legal basis for why the broad discovery demand sought by defendant's is unwarranted, and it's continued objection to being compelled to disclose unrelated and sensitive investigate material.[2]

## II. ARGUMENT

### *A. "Operation Keyhole" functioned as a funding source, not an investigative tool into Defendants' Conduct.*

Operation Keyhole is a certified undercover operation (CUC), administered exclusively by the Special Agent in Charge (SAC) for Homeland Security Investigations (HSI) St. Paul. Keyhole, which was first established by HSI St. Paul in 2008, has supported undercover investigative activity undertaken since that time by HSI St. Paul, whose area of responsibility encompasses the states of Minnesota, North Dakota, and South Dakota, and historically included Iowa and Nebraska.

HSI's undercover program originated after enactment of the Homeland Security Act of 2002, which authorized the newly created U.S. Immigration and

[2] The request of the defendant's is construed broadly by the government related to investigate material contained in "Operation Keyhole." After several conversations with defense counsel regarding what exactly they seek from operation keyhole, it is still unclear to the Government if the defendants' discovery demand relates to true identities of active under-cover agents (UCA) in whole or in part to "Operation Keyhole." As the court will note below that a blanket order to disclose active UCA identities will pose serious risk to the safety of the UCAs and would be detrimental to ongoing investigations that are entirely unrelated to the charged offenses.

Customs Enforcement (ICE) to conduct undercover investigative operations to obtain evidence or information related to suspected criminal violations of laws enforced by ICE. This included the investigative authorities ICE inherited from its legacy agencies, the U.S. Customs Service and the Immigration and Naturalization Service, which were then delegated to HSI. Specifically, HSI's statutory authority to establish, maintain, and operate CUCs to support its undercover investigative activity, derives from 8 U.S.C. § 1363a and 19 U.S.C. § 2081.

HSI's undercover investigations often bear higher costs than other investigative activities and require unique resources; the administrative function of the CUC allows HSI SAC offices to lessen the financial burden and more efficiently conduct undercover activity by sharing undercover assets between investigations under their CUC.

CUC Keyhole was first certified on December 22, 2008, by then Director of the ICE Office of Investigations (now HSI), following a review and recommendation by the Undercover Review Committee (URC), a committee then-consisting of senior officials from HSI and the Department of Justice.

All HSI CUCs are reviewed by the HSI URC, which makes a recommendation to the Executive Associate Director (EAD) of HSI, who then certifies the undercover operation as necessary to investigate violations of the laws enforced by HSI. Each CUC is subject to regular review and reauthorization by the URC and EAD for its continued activity as an undercover operation.

Since its initial certification and authorization in 2008, HSI St. Paul has used

CUC Keyhole to support undercover investigative activity in dozens of separate investigations into multiple areas of criminal activity, including but not limited to, narcotics trafficking, child sexual abuse, financial investigations, and counter-proliferation. CUC Keyhole and its active investigations were last reviewed by the URC in June 2026 and was recertified by the EAD on June 29, 2026. In accordance with HSI policy, CUC Keyhole is next due to be reviewed for reauthorization by December 31, 2026.

Any individual HSI investigation that requires the support of a CUC for certain undercover activities must seek approval from the Special Agent in Charge (SAC) that administers a CUC to be included in that CUC. To date, 77 separate criminal investigations have been approved for such undercover activity under CUC Keyhole by a St. Paul SAC. In January 2026, the investigative case "Operation Puppet Master" was approved for inclusion under CUC Keyhole. In March 2026, the investigative case "Project Whipple Shield" was approved for inclusion under CUC Keyhole.

Inclusion of Operation Puppet Master and Project Whipple Shield under CUC Keyhole enabled the use of CUC Keyhole funds to provide investigative support, such as funding the deployment of personnel and the acquisition of necessary equipment.

As of the last reauthorization of CUC Keyhole in June 2026, HSI St. Paul had six active criminal investigations utilizing CUC Keyhole to support undercover activity, one of which was Project Whipple Shield. Operation Puppet Master had ceased undercover activity under CUC Keyhole by that time. The five other active

investigations under CUC Keyhole concern a variety of criminal activity, all are unrelated to this prosecution and these defendants, and all are unrelated to the criminal violations and targets of Project Whipple Shield and Operation Puppet Master.

Requiring the disclosure of any information or documentation about CUC Keyhole and the other ongoing investigations under it would not only jeopardize these investigations but would endanger confidential informants and undercover agents involved in those unrelated criminal investigations.

*B. The content of "Operation Keyhole" is not Discoverable because it is not Relevant nor Material to the Defendants' Case.*

Criminal defendants do not have a general constitutional right to discovery. *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000); *see also, e.g., United States v. Tavlin*, No. 22-cr-134 (DWF/JFD), 2023 WL 3477610, at *3 (D. Minn. May 16, 2023). In most circumstances a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government. *Johnson*, 228 F.3d at 924; *accord Tavlin*, 2023 WL 3477610, at *3.

In criminal cases, the prosecution's 'discovery obligation is rooted in two separate sources: Rule 16 and the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution." *United States v. Ivers*, No. 22-cr-00341 (RWP/HCA), 2023 WL 2182327, at *2 (D. Minn. Feb. 23, 2023) (quoting *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1073-74 (D. Mont. 2005)). Under Federal Rule of Criminal Procedure 16(a)(1), the Government is required "to disclose, among other things, and upon the defendant's request, a defendant's oral, written, or recorded

statement; and documents and objects within [its] possession, custody, or control that are material to the defense, intended to be used in the government's case-in-chief, or from the defendant." *Tavlin*, 2023 WL 3477610, at *3 (citing Fed. R. Crim. P. 16(a)(1)(A), (B), (E)).

The Eighth Circuit defines 'material' information for purposes of Rule 16 as information that is "helpful to the defense." *United States v. Hoeffener*, No. 4:16CR00374 JAR/PLC, 2017 WL 3676141, at *11 (E.D. Mo. Aug. 25, 2017) (quoting *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994)); *see also, e.g., United States v. Red Bird*, No. 3:20-30026-RAL, 2020 WL 6129634, at *5 (D. S.D. Oct. 19, 2020). A showing of materiality, however, is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense. *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985) (quotation omitted); *accord Red Bird*, 2020 WL 6129634, at *5; *Hoeffener*, 2017 WL 3676141, at *11; *cf. Ivers*, 2023 WL 2182327, at *2 ("defendant must make a threshold showing of materiality" (quotation omitted)).

Furthermore, the defendants have failed to show that their extraordinarily broad discovery requests are "material to preparing the defense" under Rule 16. (Rule16(a)(2) specifically excludes from the government's discovery obligations under Rule 16(a)(1)(E) the production of reports, memoranda, or other internal government documents made by an attorney or agent in connection with investigations or prosecutions.)

Here, the defendants have failed to identify any material information that

CUC Keyhole may contain other than pure conjecture. And to the extent that the defendants' knowledge of the existence of CUC Keyhole even exists, it is because of the extensive amount of discovery already turned over to defense in the Government's ongoing disclosure obligations. Defendants' entire complaint to the court is that they don't know what information might be contained in CUC Keyhole and therefore can only know for certain if there is relevant and exculpatory evidence through fulsome disclosures of the operations contents.[3] Furthermore, the Government has already disclosed how CUC Keyhole relates to Operations Puppet Master and Whipple Shield, thus, CUC Keyhole is both irrelevant to and immaterial to the defendants' case.

Therefore, the defendants' argument, however, falls far short of what they are charged to show under the law.

Based solely on defendants' fishing outing into an unrelated operation, this court should deny defenses' motion to compel disclosure of CUC Keyhole. Should the court decide there is some level of disclosure warranted, the proper, yet arduous manner to determine discoverable material, if any, from CUC Keyhole would be to conduct an in-camera review of its contents.

[3] Largely, the underpinnings of the defendants' arguments for why they need to know what "Operation Keyhole" contains is based on a forecasted motion to dismiss based on selective prosecution and vindictive prosecution. Courts are cautious in considering selective prosecution claims as it triggers separation of powers issues and is therefore a very high burden to prevail. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also United States v. McIver,* 809 F. Supp. 3d 221, 245 (D.N.J. 2025); *see also United States v. S. Poverty L. Ctr., Inc.,* No. 2:26-CR-139-ECM, 2026 WL 2280675, at 1 (M.D. Ala. Aug. 7, 2026); *see also U.S. v. Hendrickson,* 664 F.Supp.2d 793, 475 (E.D. Mich. 2009) (quoting *United States v. Catlett,* 584 F.2d 864, 868 (8th Cir.1978); *see also United States v. William Bonne,* 437 F.3d 829, 841-2. (8th Cir. 2006). The same can be said for vindictive prosecution. *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016). Neither of these *possibilities* should serve as an end-runaround of the tents of basic discovery law.

## III. **CONCLUSION**

Given this definition and context of CUC Keyhole, the Government requests the court to deny the defendants' request with regard to the wide berth of discovery requested on CUC Keyhole.

The Defendants have not made a preliminary showing that the requested information is materially exculpatory under *Brady*.

The Defendant's large-scale characterization of the investigation is based on suppositions that fail to meet the standards laid out in Rule 16, *Brady* or of case law on vindictive or selective prosecution or outrageous government conduct generally, and more specifically fail to articulate in a discernable manner the contents of "Operation Keyhole" are relevant and material to an *issue at trial*.

Dated: 9/9/2026

Respectfully Submitted,
DANIEL N. ROSEN
United States Attorney

BY: /s/ Tory Sailer
TORY R. SAILER
Assistant United States Attorney
300 S. 4th Street, Suite 600
Minneapolis, MN 55415
MN Attorney Reg: 0400345
Tory.Sailer@usdoj.gov
(612)-664-5600