**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

United States of America,

Plaintiff,

v.

Isaac Auman Sant, Emmett James Doyle, Cameron Kennedy, Callum Robinet, Erik Davis, Brian Stillwell Apland, Kyle Wagner, Hannah Margaret Van De Water Davis, Treasure Cay Thoreson, Nathan Junho Kim, Alec Stewart, Douglas Misterek, Dustin Scott Beisell, William Morgan, Natasha Rakotz,

Defendants.

Case No. 0:26-CR-00115-KMM-DTS (D. Minn.)

**DECLARATION OF MATTHEW DEATES**

---

I, Matthew Deates, declare as follows:

1. I am an Assistant Federal Defender for the District of Minnesota. I submit this declaration in support of my motion for return or destruction of the O'Neal Memorandum, defined below, and to compel a correction of the record. I have personal knowledge of the facts set forth in this declaration, except where I indicate that a fact is based on a document in my file or otherwise state the basis for my knowledge.

2. I represented Ezequiel De Jesus Portillo-Rodriguez in *United States v. Portillo-Rodriguez*, No. 0:25-cr-00138 (D. Minn.), an illegal-reentry prosecution. I do not represent, and have never represented, any of the fifteen defendants charged in *United States v. Isaac Sant, et al.*, No. 0:26-cr-00115-KMM-DTS (D. Minn.) (the "*Sant* case").

3. On March 18, 2026, the United States District Court for the Eastern District of California ordered Mr. Portillo-Rodriguez released from ICE custody and further enjoined the government from re-detaining him on immigration grounds "absent exigent circumstances, without providing [him] notice and a pre-detention hearing before an immigration judge." A true and correct copy of that order is attached as Exhibit 1. (Ex. 1 at 9.)

4. Mr. Portillo-Rodriguez had previously been arrested in the Eastern District of California on the illegal-reentry indictment arising from the District of Minnesota but, on September 2, 2025, the Eastern District of California ordered Mr. Portillo-Rodriguez released to pretrial supervision. From the inception of Mr. Portillo-Rodriguez's pretrial release, his federal conditions of release expressly authorized him to travel between the Eastern District of California and the District of Minnesota "for court purposes only." A true and correct copy of the Special Conditions of Release, dated September 2, 2025, is attached as Exhibit 2. (Ex. 2 at 1.) That authorization had been in place for nearly eight months before the April 28, 2026 hearing described below.

5. Following Mr. Portillo-Rodriguez's court-ordered release from ICE custody, the United States District Court for the District of Minnesota scheduled his initial appearance on the illegal-reentry indictment for April 28, 2026. On April 24, 2026, the government, through AUSA Nicole Moody of the Eastern District of California, stipulated, without objection, that Mr. Portillo-Rodriguez would not be electronically monitored "while he's traveling between California and Minnesota for the purposes of attending

court." The assigned magistrate judge so ordered. A true and correct copy of the Stipulation and Order to Modify Special Conditions of Release is attached as Exhibit 3. (Ex. 3 at 1–3.)

6. On April 27, 2026, the day before the hearing described below, the Minnesota probation officer filed an addendum to the pretrial services report that likewise authorized Mr. Portillo-Rodriguez's travel between California and Minnesota (for court purposes only) and confirmed that both the government and the defense had been informed of the updated recommendations and reported no objections.

7. On April 21, 2026, AUSA Matthew Murphy notified the Minnesota Federal Defender's Office that Mr. Portillo-Rodriguez would be coming in for an initial appearance in the District of Minnesota. AUSA Murphy informed my supervisor that the government "will agree to continued release" upon Mr. Portillo-Rodriguez's initial appearance. My supervisor emailed this information to me ahead of the April 28 hearing. A true and correct copy of that email is attached as Exhibit 5.

8. On April 28, 2026, I appeared with Mr. Portillo-Rodriguez before United States Magistrate Judge David T. Schultz for his initial appearance. I was personally present throughout the hearing. AUSA Grayson Feist asked Magistrate Judge Schultz to adopt Pretrial Services' recommendations for Mr. Portillo-Rodriguez's continued pretrial release, and Magistrate Judge Schultz did so on the record before Mr. Portillo-Rodriguez and I left the courtroom. On the record, with AUSA Feist present and raising no objection, I disclosed that Mr. Portillo-Rodriguez lives in California and had come to Minnesota only because the charge arose in this District. A true and correct copy of the transcript of that hearing is attached as Exhibit 6. (Ex. 6 at 3–4.)

9. The written order the Court entered that same day again authorized travel between "California and Minnesota (court purposes only)," removed the location-monitoring condition previously in place, and directed that "[t]he defendant is ORDERED released after processing." That order did not direct Mr. Portillo-Rodriguez to report to the U.S. Marshals Service or to Pretrial Services following the hearing, and no additional intake was required because he was already under pretrial supervision. A true and correct copy of that order is attached as Exhibit 7. (Ex. 7 at 2, 6.)

10. At the conclusion of the hearing, Mr. Portillo-Rodriguez had just been ordered released by a sitting federal magistrate judge. He was not in custody, under arrest, or subject to any lawful process that I could have helped him evade.

11. After the April 28, 2026 hearing, I brought Mr. Portillo-Rodriguez to the Federal Defender's Office, together with a Spanish-language interpreter who had assisted during the hearing. I arranged for him to get some food, and then I walked him to the light-rail station. I did this for the sole purpose of enabling Mr. Portillo-Rodriguez to begin his return to California—the very state to which the Court had just ordered him to return. I have since communicated with the interpreter, who confirms this account. Until I read the O'Neal Memorandum, I was unaware that any government agent was following or surveilling me while I walked my client to the light-rail station.

12. I did not overhear, and had no knowledge at the time of, any conversation between ICE Deportation Officer Michael J. O'Neal and Deputy U.S. Marshal Cassandra Stone. I was not aware, on April 28, 2026, of any plan by Officer O'Neal or anyone else to administratively arrest Mr. Portillo-Rodriguez following the hearing. Indeed, I believed

that everyone from the government already knew about the above-described Order from the United States District Court for the Eastern District of California dated March 18, 2026, which prohibited such an administrative arrest. (Ex. 1 at 9.) I also believed that everyone from the government had agreed to Mr. Portillo-Rodriguez's continued pretrial release on the unobjected-to conditions ordered by the Court.

13. On the morning of April 29, 2026, AUSA Murphy emailed me that Mr. Portillo-Rodriguez "made his initial appearance yesterday on an illegal reentry charge" and that "we can probably wrap this one up pretty quickly." A true and correct copy of that email is attached as Exhibit 8.

14. Following the hearing, AUSA Murphy and I continued to litigate Mr. Portillo-Rodriguez's case openly and cooperatively, including jointly moving to vacate a status conference and discussing a possible Rule 20 transfer of the case to California in light of Mr. Portillo-Rodriguez's residence there.

15. I first learned of the memorandum described below when the government produced it in discovery in the *Sant* case—a case, as noted above, with which I have no connection. The memorandum is dated April 29, 2026, is captioned "Aid and Abetting," and is addressed from Officer O'Neal to ICE Assistant Field Office Director Corey McMahon (the "O'Neal Memorandum"). A true and correct copy of the O'Neal Memorandum is attached as Exhibit 9. According to the government, the O'Neal Memorandum was disclosed to counsel for the *Sant* defendants on August 20, 2026, as pages 9 through 11 of a Report on Investigation designated "ROI 24" (Bates No. 58752). (Ex. 12 at 1.)

16. The O'Neal Memorandum states: "To my knowledge, Portillo-Rodriguez did not make his appointment with the U.S. Public Defenders Office and was aided and abetted from immigration arrest by Assistant Public Defender Matthew Deates." (Ex. 9 at 2.) That accusation is false, for the reasons set forth in paragraphs 3 through 12 above.

17. The O'Neal Memorandum further states that Officer O'Neal intended to conduct an administrative arrest of Mr. Portillo-Rodriguez at the U.S. Pretrial Services Office on April 28, 2026—notwithstanding the standing federal injunction described in paragraph 3 above. (Ex. 9 at 1–2.)

18. The O'Neal Memorandum states that the April 28 hearing was conducted before "Chief Magistrate Judge Erickson." (Ex. 9 at 1.) That is incorrect. As stated in paragraph 8 above, the hearing was conducted by United States Magistrate Judge David T. Schultz, as I personally know and as the hearing transcript confirms. (Ex. 6 at 1.)

19. The O'Neal Memorandum also states that Mr. Portillo-Rodriguez missed his appointment with the "U.S. Public Defenders Office." (Ex. 9 at 2.) That, too, is incorrect. Mr. Portillo-Rodriguez met with me, his counsel, at the Federal Defender's Office immediately following the April 28 hearing, as described in paragraph 11 above.

20. The O'Neal Memorandum states that Officer O'Neal did not learn of the Eastern District of California injunction described in paragraph 3 above until after the April 28 hearing, on his drive home, from Special Agent Brubaker. (Ex. 9 at 2.)

21. On September 4, 2026, my counsel, Christopher W. Madel of MADEL PA, sent a letter to Assistant United States Attorneys Michael Blackburn and Tory Sailer and Special Assistant United States Attorney Sommer Honeycutt, demanding that, by

September 18, 2026, the government notify all recipients of the O'Neal Memorandum that it was produced in error, secure the return or destruction of all copies, and confirm in writing that it had done so. A true and correct copy of that letter is attached as Exhibit 10.

22. My counsel has informed me that, on September 18, 2026, Assistant United States Attorney LeeAnn Bell spoke with him about that letter and requested additional time for the government to respond, and that he agreed. On September 21, 2026, my counsel sent AUSA Bell an email confirming that I would provide the government with "another week to accomplish what we've asked for," while cautioning that "simply retrieving the O'Neal memorandum is insufficient" and that "[t]he government needs to satisfy our demands as stated in my September 4, 2026 letter at pages 6-7." The email also identified *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975); *In re Smith*, 656 F.2d 1101 (5th Cir. Unit A 1981); *United States v. Anderson*, 55 F. Supp. 2d 1163 (D. Kan. 1999); and *United States v. Holy Land Foundation*, 624 F.3d 685 (5th Cir. 2010), as authorities on which I would rely if I were required to file this motion, and asked AUSA Bell to contact my counsel by the end of that week. A true and correct copy of that email is attached as Exhibit 11.

23. On September 25, 2026, within the additional time the government had requested, Assistant United States Attorney Tory Sailer sent a letter by email to counsel for the defendants in the *Sant* case concerning the O'Neal Memorandum. The letter is not addressed or copied to my counsel or to me. A true and correct copy of that letter is attached as Exhibit 12. The letter states that the O'Neal Memorandum "references a different defendant on unrelated charges and is neither material nor relevant to your client's case."

It continues: “Thus, is [sic] was not within the scope of required discovery.” It requests that the O’Neal Memorandum, together with “any summaries, excerpts or other data referencing” it, be returned or, if they cannot be returned, destroyed. And it states that “[t]he O’Neal Memo does not reflect the position of the United States Attorney’s Office.” (Ex. 12.)

24. The government’s September 25, 2026 letter does not state that the O’Neal Memorandum’s accusations about me are false or inaccurate; indeed, it does not mention me at all. (Ex. 12.) Nor does the letter take the other steps my counsel demanded in the September 4, 2026 letter and reiterated in the September 21, 2026 email. (Exs. 10–12.) The letter does not ask recipients to confirm that they have returned or destroyed their copies, and, as of the date of this declaration, the government has not confirmed to my counsel that any recipient has done so.

25. I am a sitting Assistant Federal Defender. My professional reputation depends on the trust of this Court, opposing counsel, and my clients. The O’Neal Memorandum’s false accusation that I aided and abetted a criminal defendant’s evading arrest is now in the hands of counsel for all fifteen defendants in the *Sant* case—individuals who have no way of knowing the accusation is false unless the government corrects the record. The O’Neal Memorandum’s accusations about me are false. The government should never have produced that memorandum in an unrelated case—the government now concedes the memorandum is “neither material nor relevant” to that case—and the government’s September 25, 2026 letter, which says nothing about the falsity of the accusations against me, does not correct the record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2026, at Minneapolis, Minnesota.

*/s/ Matthew Deates*
Matthew Deates