# EXHIBIT 9

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
1 Federal Drive, Suite 1640
Fort Snelling, MN 55111

U.S. Immigration and Customs Enforcement

April 29, 2026

MEMORANDUM FOR: Corey McMahon
Assistant Field Office Director

FROM: Michael J. O'Neal
Deportation Officer

SUBJECT: Aid and Abetting

On April 28, 2026, I Deportation Officer (DO) O'Neal attended an initial appearance for [redacted] at the United States District Court District of Minnesota in Minneapolis, Minnesota in front of Chief Magistrate Judge Erickson. Prior to the hearing Deputy Marshal Gnitka stated there was two individuals being seen for a Title 8 U.S.C. 1326(a) charge, at the time I was only aware of my case. Upon entering the courtroom, there was another alien seated at the defendants table beside Assistant Public Defender Matthew Deates, there were three cases being heard. I took a seat in the galley and awaited the hearing to start. The second alien was called, his name was PORTILLO-Rodriguez, Ezequiel ([redacted]), a name I recognized. I then searched the name using my government cell phone which populated a memorandum from myself to U.S.C.I.S. requesting a Certificate of Nonexistense (CTNE). I then text Blake Willwerscheid asking if he was aware of the case. Blake responded that it was a Special Agent Brubaker case with Homeland Security Investigations (HSI).

I text SDDO Nicholas Carey inquiring about the case as I knew I had a part in the case as the CTNE was requested in April of 2025. I suspected Chief Magistrate Judge Erickson would grant an appearance bond as he had just done in the case of [redacted] even though he had acknowledged on record that PORTILLO-Rodriguez lived in California. I did not receive a text response from SDDO Carey while court was in session. Once court was adjourned, I approached the Prosecuting attorney's, asked if this was a case that ERO was not to place a detainer with, to which they replied they did not know. I then approached Deputy Marchal Cassandra Stone and stated I was going to take PORTILLO-Rodriguez as I knew he is a Reinstate that had just been granted an appearance bond and would be released to the street on conditions set forth by U.S. Probation and Pretrial Services. Deputy Marshal Stone stated that PORTILLO-Rodriguez did not need to go back to the Marshals cell block as he had already been booked but would need to report to U.S. Probation and Pretrial Services and I could make an administrative arrest there. Assistant Public Defender Matthew Deates was listening to the conversation I was having with Deputy Marshal Stone, made eye contact with me, then told his client PORTILLO-Rodriguez they needed to leave and follow him downstairs. I then left the

courtroom with the Marshals to the cellblock where I called SDDO Carey, explained the situation and requested an I-200. I received an email from SDDO Carey with a signed I-200 shortly thereafter.

Upon receiving the I-200, Deputy Marshal Gnitka escorted me to the U.S. Probation and Pretrial Services where we waited for PORTILLO-Rodriguez's arrival. After several minutes, Deputy Marshal Stone approached, asking if PORTILLO-Rodriguez had reported, he had not, Deputy Marshals Stone, Gnitka, and I approached the window and inquired if anyone had checked in within the past ten minutes, and their response was no. Deputy Marshal Stone then asked specifically if PORTILLO-Rodriguez had checked in, their answer was again no. Deputy Marshal Stone then returned to the United States Marshals Office to review video and locate PORTILLO-Rodriguez, she observed PORTILLO-Rodriguez and Assistant Public Defender Matthew Deates in the public lobby. Deputy Marshals Stone, Gnitka, and I proceeded to the public lobby. Once in the public lobby, PORTILLO-Rodriguez and Assistant Public Defender Matthew Deates were not located, assuming they may have made their way to the U.S. Public Defenders Office we walked down the hallway. I glanced outside and noticed Assistant Public Defender Matthew Deates walking alongside to the right of PORTILLO-Rodriguez, while he wore a backpack on the sidewalk to the West of the Minneapolis City Hall heading South towards the light rail.

Deputy Marshals Stone, Gnitka, and I followed PORTILLO-Rodriguez and Assistant Public Defender Matthew Deates while wearing plain clothes with no police markings visible. We were stopped at a red light awaiting to cross at the intersection of 3rd Avenue and 4th Street while PORTILLO-Rodriguez and Assistant Public Defender Matthew Deates continued South. Deputy Marshal Stone called her supervisor to brief them of the ongoing situation, while I contacted SDDO Holien of the ongoing situation. Upon arrival to the light rail station between the Minneapolis City Hall and the Hennepin County Courthouse PORTILLO-Rodriguez and Assistant Public Defender Matthew Deates were not seen, there were light rail cars in each direction at the time of our arrival, once the cars departed, Assistant Public Defender Matthew Deates was seen by himself on the South platform, PORTILLO-Rodriguez had boarded a light rail car heading East, unknown if it was a green or blue line. Deputy Marshals Stone, Gnitka, and I returned to the United States District Courthouse and met by Supervisory Deputy Marshal Austin who was watching from inside the building.

To my knowledge, PORTILLO-Rodriguez did not make his appointment with the U.S. Public Defenders Office and was aided and abetted from immigration arrest by Assistant Public Defender Matthew Deates.

It must be noted that on my drive home, I contacted Special Agent Brubaker, I inquired about the case, and she stated PORTILLO-Rodriguez had been in custody in California and released on a Habeas Corpus and made his way to Minnesota to attend an initial appearance. At no time prior to the incident had I been aware of that information.

//nothing follows//