# EXHIBIT 10

MADEL PA

434 LAKE STREET
EXCELSIOR, MINNESOTA 55331
(612) 605-0630
WWW.MADELLAW.COM

CHRISTOPHER W. MADEL
DIRECT DIAL
(612) 605-0661
CMADEL@MADELLAW.COM

September 4, 2026

Michael Blackburn (michael.blackburn2@usdoj.gov)
Tory Sailer (tory.sailer@usdoj.gov) ***Via email***
Assistant United States Attorneys
Sommer Honeycutt (sommer.honeycutt@usdoj.gov)
Special Assistant United States Attorney
United States Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**Re: *United States v. Isaac Sant et al.*, 26-cr-00115-KMM-DTS (D. Minn.)—Improper Production of DHS/ICE Memorandum Falsely Accusing Assistant Federal Defender Matthew Deates of Aiding and Abetting**

Dear AUSA Blackburn, SAUSA Honeycutt, & AUSA Sailer:

We represent Matthew Deates, an esteemed Assistant Federal Defender for the District of Minnesota. I write regarding a document your office produced in discovery in the above-referenced prosecution—a memorandum of the Department of Homeland Security, U.S. Immigration and Customs Enforcement, dated April 29, 2026, from Deportation Officer Michael J. O'Neal to ICE Assistant Field Office Director Corey McMahon, captioned "Aid and Abetting" (the "O'Neal Memorandum").

Mr. Deates does not represent any of the fifteen Minnesota defendants your office is prosecuting in *United States v. Isaac Sant et al.,* 26-cr-00115-KMM-DTS, nor does he have any connection to any of these defendants. The O'Neal Memorandum instead concerns an entirely separate and unrelated matter—Mr. Deates's representation of Ezequiel De Jesus Portillo-Rodriguez in *United States v. Portillo-Rodriguez*, No. 0:25-cr-00138 (D. Minn.), an illegal reentry prosecution. The O'Neal Memorandum falsely accuses Mr. Deates of having "aided and abetted [Mr. Portillo-Rodriguez] from immigration arrest" following Mr. Portillo-Rodriguez's initial appearance in that case in the U.S. District Court for the District of Minnesota on April 28, 2026.

That accusation is wrong in every material respect, as the record set out below establishes. Its production to myriad defense counsel in a case with which Mr. Deates has no connection exposes a sitting Assistant Federal Defender to public suspicion of criminal conduct, based on an ICE officer's uninformed and erroneous account of a routine, court-authorized event. As detailed *infra*, we demand that your office correct the record and take all steps to retrieve the O'Neal Memorandum.

**<u>Why Officer O'Neal's Accusation Against Mr. Deates Is Wrong in Multiple Respects</u>**

In his Memorandum, Officer O'Neal wrote, *inter alia*:

> To my knowledge, PORTILLO-Rodriguez did not make his appointment with the U.S. Public Defenders Office and was aided and abetted from immigration arrest by Assistant Public Defender Matthew Deates.

(O'Neal Mem. at 2.) This is categorically false.

1. On March 18, 2026, the United States District Court for the Eastern District of California ordered Mr. Portillo-Rodriguez released from ICE custody. (Order Converting Mot. for TRO into Mot. for Prelim. Inj. and Granting that Mot. ("Eastern District of California Order") at 9 (Mar. 18, 2026).) Furthermore, the Court enjoined the government from re-detaining him on immigration grounds "absent exigent circumstances, without providing [him] notice and a pre-detention hearing before an immigration judge." (*Id.*) If Officer O'Neal desired to conduct an administrative arrest of Mr. Portillo-Rodriguez on April 28, 2026, he would have violated the Eastern District of California Order. Indeed, the government, including ICE, was obliged to first prove "exigent circumstances" and *then* provide Mr. Portillo-Rodriguez with notice and a pre-detention hearing before an immigration judge. (*Id.*)

2. Mr. Portillo-Rodriguez's travel between Minnesota and California was not flight from justice. It was expressly authorized by his federal conditions of release, which permitted travel between the Eastern District of California and the District of Minnesota "for court purposes" from the very inception of his release. (Special Conditions of Release at 1 (Sept. 2, 2025).) And this was *nearly eight months before* the April 28, 2026 hearing.

3. Days before the April 28 hearing, the government itself—through AUSA Nicole Moody of the Eastern District of California—stipulated, without objection, that Mr. Portillo-Rodriguez would not be electronically monitored "while he's traveling between California and Minnesota for the purposes of attending court." (Stipulation and Order to Modify Special Conditions of Release at 1-3 (Apr. 24, 2026).) The assigned magistrate judge so ordered. (*Id.*)

4. The Minnesota probation officer's addendum recommending Mr. Portillo-Rodriguez's release conditions—filed the day before the April 28 hearing—likewise authorized his travel between "California and Minnesota (court purposes only)" and expressly noted that both the government and the defense "have been informed of the updated recommendations and reported no objections." (Addendum to Pretrial Services Report at 3 (Apr. 27, 2026).)

5. Ahead of the April 28 hearing, the government, through AUSA Matthew Murphy of the District of Minnesota, notified the Federal Defender's Office in the District of Minnesota that Mr. Portillo-Rodriguez would be coming in for an initial appearance. (Email from M. Atwal to Federal Defender's Office, including Mr. Deates (April 21, 2026).) AUSA Murphy represented that Mr. Portillo-Rodriguez had previously been ordered released to pretrial supervision by the Eastern District of California and ordered released from ICE custody on March 19, 2026. (*Id.*) AUSA Murphy confirmed that, upon Mr. Portillo-Rodriguez's appearance in the District of Minnesota on April 28, 2026, the government would agree to his continued release. (*See id.* ("After his [California Assistant Federal Public Defender] asked about a Rule 20, [AUSA] Matt [Murphy] responded: His guidelines are 0-6 months. Based on my last conversation with the EDCA, it is not amenable to a Rule 20 transfer…. Initial appearance on April 28; Gov't will agree to continued release").

6. At the April 28 hearing itself, AUSA Grayson Feist asked the presiding judge to adopt Pretrial Services' recommendations for Mr. Portillo-Rodriguez's release. (Tr. of Initial Appearance at 3 (Apr. 28, 2026).) The Court did so on the record before Mr. Deates and his client ever left the courtroom. (*Id.*)

7. The written release order the Court entered that same day—minutes before the events Officer O'Neal describes—again authorized travel between "California and Minnesota (court purposes only)" and removed the location-monitoring conditions previously in place. (Order Setting Conditions of Release at 2 (Apr. 28, 2026).)

8. On the record at that same hearing, with the prosecuting AUSA present and raising no objection, Mr. Deates disclosed that "Mr. Portillo lives in California" and had traveled to Minnesota only because the charge arose in this District. (Tr. of Initial Appearance at 4 (Apr. 28, 2026).) Mr. Portillo-Rodriguez's return to California was neither secret nor surprising to anyone in the courtroom. (*See id.*).

9. The same order directed that "[t]he defendant is ORDERED released after processing." (Order Setting Conditions of Release at 6 (Apr. 28, 2026).) At the moment Mr. Deates and his client left the courthouse, Mr. Portillo-Rodriguez had just been ordered released by a sitting federal magistrate judge—he was not in custody, under arrest, or subject to

any lawful process that Mr. Deates could have helped him evade. (*See id.*) Nor did that order or Mr. Portillo-Rodriguez's conditions of release direct him to report to the U.S. Marshals Service ("USMS") or to Pretrial Services following the hearing; he was already under pretrial supervision, and no additional intake was required. Indeed, the transcript from the April 28 hearing shows the presiding magistrate judge never directed Mr. Portillo-Rodriguez to report to Pretrial Services or the USMS at the conclusion of the hearing. (Tr. of Initial Appearance at 4 (Apr. 28, 2026).)

10. Officer O'Neal's own account confirms that the only "arrest" at issue was not a court process at all, but a unilateral administrative arrest he *intended* to make at the U.S. Pretrial Services Office in Minnesota, (O'Neal Mem. at 1), notwithstanding the standing federal injunction prohibiting the same described in paragraph 1 above. (*See* ¶ 1, *supra.*) The Spanish interpreter who accompanied Mr. Deates and Mr. Portillo-Rodriguez confirms that Mr. Deates brought Mr. Portillo-Rodriguez to the Federal Defender's Office and then walked him to the light rail for the sole purpose of enabling his return to California—the very state to which the Court ordered him to return.

    Advising a client to leave the courthouse rather than submit to an arrest that a federal court had already enjoined is not aiding and abetting anything; it is following a lawful order. In stark contrast, if Officer O'Neal had accomplished what he claims to have wanted to do on April 28, his conduct would have constituted contempt of court.[1]

11. As even Officer O'Neal's report includes, there was another defendant charged with illegal reentry who made his initial appearance on April 28, 2026. This was Diego Plaza-Tarco. (*See United States v. Diego Plaza-Tarco*, 26-cr-30-MJD-DJF (D. Minn.)). Unlike Mr. Portillo-Rodriguez, Mr. Plaza-Tarco was subject to an ICE detainer. Accordingly, when Magistrate Judge Schultz ordered Mr. Plaza-Tarco released at the conclusion of the April 28 initial appearance, the expectation was that the USMS would transfer him to ICE custody pursuant to the detainer; indeed, this is what happens in every illegal reentry case where the defendant is released to pretrial supervision by the Court but where an active ICE detainer exists. And that is, in fact, what happened to Mr. Plaza-Tarco—Magistrate Judge Schultz ordered him released to pretrial supervision, but the USMS transferred him to ICE custody (likely to Officer O'Neal himself) before he ever saw the street.

    Mr. Deates did not overhear Officer O'Neal's conversation with Deputy U.S. Marshal Cassandra Stone. Nevertheless, even assuming, *arguendo*, that Officer O'Neal's powers

---

[1] Please advise if someone has generated any document advising Officer O'Neal that his now-memorialized plans on April 28 would have constituted a crime under 18 U.S.C. § 401. (*See* O'Neal Mem. at 2.)

of extrasensory perception are so preternatural so as to allow him to read Mr. Deates's mind—a proposition for which the record offers no support, and common sense even less—it is plain that any reasonably competent attorney in Mr. Deates's position would have concluded that Officer O'Neal and Deputy U.S. Marshal Stone were discussing Mr. Plaza-Tarco, not Mr. Portillo-Rodriguez. Mr. Deates knew that only Mr. Plaza-Tarco was subject to an ICE detainer, that Mr. Portillo-Rodriguez had already been ordered released from both USMS and ICE custody before the April 28 hearing, and that the Eastern District of California Order was in effect.

Officer O'Neal, by his own account, knew none of it. (O'Neal Mem. at 2.)

12. Officer O'Neal's account is not merely mistaken about the law. It is unreliable in its particulars. His memorandum states that he observed the relevant initial appearance take place before "Chief Magistrate Judge Erickson." The Court's own transcript confirms the hearing was conducted by United States Magistrate Judge David T. Schultz. (Tr. of Initial Appearance at 1 (Apr. 28, 2026).) In addition, in the screenshot from Officer O'Neal's Memorandum pasted above, Officer O'Neal states that Mr. Portillo-Rodriguez missed his appointment with the "U.S. Public Defenders Office." (O'Neal Mem. at 2.) This, too, is false. Mr. Portillo-Rodriguez fulfilled his appointment with the Federal Defender's Office at the conclusion of the April 28 hearing.

    Officer O'Neal cannot correctly identify the judge who presided over the hearing he purports to describe, and he cannot even say whether Mr. Portillo-Rodriguez met with his lawyer. These are not peripheral details; they are among the most basic facts of the very proceeding Officer O'Neal claims to remember.

    Officer O'Neal asks the reader to accept his account as the basis for a federal-felony allegation while simultaneously demonstrating that he cannot reliably recall the most fundamental facts of the proceeding he claims to have witnessed. The charge is serious. Officer O'Neal's credibility is not.

13. Perhaps most tellingly, Officer O'Neal admits in his own memorandum that he was unaware of the Eastern District of California Order, or of any of the California proceedings, at the time of the April 28 hearing. (Mem. from M. O'Neal to C. McMahon re Aid and Abetting at 2 (Apr. 29, 2026).) Officer O'Neal notes that he learned of them only afterward, on his drive home, from Special Agent Brubaker. (*Id.*)

14. The prosecuting AUSA's own contemporaneous conduct confirms that nothing untoward occurred. The morning after the April 28 hearing, AUSA Murphy emailed Mr. Deates to say Mr. Portillo-Rodriguez "made his initial appearance yesterday on an illegal reentry charge" and that "we can probably wrap this one up pretty quickly"—the language of routine case management, not of a prosecutor who believed defense counsel had just

helped a defendant evade federal custody. (Email from M. Murphy to M. Deates at 1 (Apr. 29, 2026).)

15. Mr. Deates and the prosecuting AUSA continued to litigate the case openly and cooperatively—jointly moving to vacate a status conference and discussing a Rule 20 transfer of the case to California in light of Mr. Portillo-Rodriguez's California residence—conduct wholly inconsistent with the concealment Officer O'Neal's memorandum imputes to Mr. Deates. (Email from M. Murphy to M. Deates at 1 (Apr. 29, 2026).)

Bluntly, it is outrageous that Officer O'Neal would accuse Mr. Deates of aiding and abetting a violation of federal law while admittedly ignorant of the Eastern District of California's order—an order that directly governed whether Officer O'Neal could lawfully arrest Mr. Portillo-Rodriguez that same day. Before leveling a criminal accusation against a sitting Assistant Federal Defender, the least Officer O'Neal owed Mr. Deates was to do his job and check whether the person he intended to administratively arrest was protected by a standing federal injunction—a five-minute inquiry he apparently never made. What makes this worse is that Officer O'Neal's own memorandum recites, in its final paragraph, precisely the fact that should have stopped him: that Mr. Portillo-Rodriguez had been released from ICE custody pursuant to a writ of habeas corpus. A reasonable officer confronted with that fact would have recognized that his entire theory of Mr. Deates's wrongdoing had just collapsed—instead, Officer O'Neal let the accusation stand, and worse, your office then produced his thoughtless memorandum to counsel for fifteen defendants in an entirely unrelated prosecution.

The O'Neal Memorandum bears no relevance whatsoever to the charges pending against the defendants in *United States v. Isaac Sant et al.*, 26-cr-00115-KMM-DTS. It is riddled with false statements. It recklessly smears the integrity of a sitting, highly respected Assistant Federal Defender. Your office should have never disclosed this baseless document to those defendants and their counsel, and it is hard to imagine what could justify having done so.

**Demand**

We demand that, on or before September 18, 2026, your office:

1. Notify, in writing, counsel for each defendant to whom the O'Neal Memorandum was produced that the memorandum was produced in error, that its allegations concerning Mr. Deates are inaccurate, and that it does not reflect a position of the United States Attorney's Office;

2. Request that each such recipient return all copies of the O'Neal Memorandum to your office and destroy any copies, excerpts, or summaries of it, in any form, that cannot be returned; and

3. Confirm to me in writing, within the same period, that the foregoing has been done.

If you fail to do so, we will be forced to take appropriate action with the Court.

Please be advised that this letter does not recount every fact establishing that Officer O'Neal's allegations are baseless. It sets out enough to show why the O'Neal Memorandum must be withdrawn and corrected immediately.

We look forward to hearing from you.

Very truly yours,



Christopher W. Madel

cc: Matthew Deates, Esq. (@ Matthew_Deates@fd.org)